# Richmond

## Burlington Mills Corp., Blue Ridge Rayon Mills Division v. Inez Hagood.

February 24, 1941.

Record No. 2385.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

*Caskie, Frost & Watts,* for the appellant.

*Frank W. Stowers,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This appeal is from a decision of the Industrial Commission of Virginia awarding the appellee, Inez Hagood, compensation for disabilities alleged to have been due to an accident in the course of her employment.

There was little dispute in the evidence before the Commission. As found by Commissioner Nickels on the hearing before him and adopted by the full Commission on its review, the facts are as follows:

On March 23, 1939, Mrs. Hagood, 20 years of age, a regular employee of the appellant, was working at a machine, approximately 15 feet away from an electric motor which was being repaired. A loose wire in the motor

caused a short circuit, which produced an electric flash and a sound resembling that of a shotgun. Mrs. Hagood saw the flash and had started to fall backwards when she was rescued by a coemployee. She said that she felt as if something had run up her arm. First aid was administered, and she was sent to her home.

On the next day, she returned to work and worked steadily, with the exception of two intervening days, until April 13, 1939. While at work on April 13, 1939, she looked up and suddenly saw the employee who had caught her when she fell on March 23rd. She thereupon fainted and fell, and has not returned to work since.

The electrical wiring in the plant was such that it was impossible for the current to have reached the machine upon which she was working. There was no pathology disclosing electrical burns or other physical conditions which usually result from electrical shock. Mrs. Hagood tacitly admitted that she did not hear the sound of the explosion, having fainted immediately upon sight of the flash.

Further facts and the conclusions of the Commission are stated in this language:

"While the claimant continued her work as disclosed hereinabove, the facts proven show that it was with difficulty as she was in an extremely nervous condition which had persisted from March 23rd to April 13th, the date upon which she ceased her activities as an employee. The medical evidence of both parties at issue shows conclusively the cause of the disability to be traumatic neurosis. The record further shows the economic and social background of the claimant, as well as mental make-up, to be a person susceptible to neurotic manifestations. All physicians who testified in the case were uniform in the opinion the present disability is caused by traumatic neurosis, which in turn was produced by the flare in the electric motor which was near-by."

An award was rendered the employee at the rate of $6 per week, beginning April 13, 1939, to continue dur-

ing disability and until subsequent conditions should justify a modification, together with allowances for medical and hospital attention.

The findings of fact by the Commission are conclusive and binding upon us. They are not subject to review in the absence of fraud. Virginia Code 1936, section 1887, subsection 61. *Blair* v. *Buchanan Coal Corp.*, 171 Va. 102, 198 S. E. 491, and cases cited.

The appellant does not charge fraud. It contends that the evidence does not support a finding that the appellee was suffering from traumatic neurosis. The evidence negatives this contention.

Mrs. Hagood testified that she was in good health prior to March 23, 1939; that when the explosion suddenly occurred "a blue blaze flared;" that, as she saw it, "something" ran up her arm "like a little needle," "something" choked her "at the neckline," and she "commenced falling backwards;" and that she has since greatly suffered from nervous and physical disorders, although she has tried to continue at her work.

Three medical doctors testified. Dr. D. P. Scott, a specialist, carefully examined her on May 29, 1939, and saw her "a good many times" thereafter up to February 29, 1940. Dr. E. F. Neal saw her on March 23, 1939, a half-hour after the accident, and a number of times thereafter up to February 27, 1940. Dr. Q. H. Barney examined her on May 24, 1939. All three agreed that she had traumatic neurosis resulting from the shock, and that, on account of her emotional make-up, the accident and shock precipitated a functional disturbance. They said that whether or not the shock had been actually received or fancied was not "enormously important," and "did not change the medical picture at all" in her case. They agreed that "anxiety neurosis" gives itself a subjective picture which produces the damage, and that no matter how honest a person may be, the question of compensation is apt to play a part in prolonging and continuing the condition. They thought that

her disability was not permanent. Another doctor, who examined the appellee on behalf of her employer, did not testify.

The doctors thus, in effect, stated that traumatic neurosis was traceable to the shock or disturbing effect on the nerves of the patient, and that in turn, the irritation of the nerves caused functional disorders, and, that whether the disability resulted from nervous reaction or from auto-suggestion set in motion by memory of the accident, the result was the same to the injured person.

In *Wasmuth-Endicott Co.* v. *Karst* (1922), 77 Ind. App. 279, 133 N. E. 609, the court defines the word "injury" as follows:

"In common speech the word 'injury' as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm, or pain or a lessened facility of the natural use of any bodily activity or capability."

The Supreme Court of Michigan in *Klein* v. *Len H. Darling Co.* (1922), 217 Mich. 485, 187 N. W. 400, said:

"An accident happened in which the deceased was an actor, and the shock to him was so acute and so depressed his vital forces as to kill him. We must not overlook man's nervous system and mental makeup and their intimate relation to his vital forces.

"This man died because his vital forces could not meet and withstand the acute depression occasioned by what he had done in the course of his employment. The injury to him was no less real and fatal in its consequences than a mortal wound. 'Accidents' within the comprehension of the Workmen's Compensation Law, include all accidents actionable at law and all former non-actionable accidents except in case of intentional and wilful misconduct on the part of the employee."

Although there is a conflict on the question, the majority of the reported cases take the view that there is an accidental or personal injury within the workmen's compensation acts where an employee, in the course of

his employment, receives a sudden shock or fright, involving no physical impact, which results in his disability. 109 A. L. R. (1937) Annotation, page 892.

The appellant further contends that the Commission erred in holding that the injury of Mrs. Hagood arose out of and in the course of her employment, and that the injury is not one for which compensation should be awarded under our Compensation Act. It rather ingeniously argues that her real injury came on April 13th, from seeing the man who had caught her when she was about to fall on March 23rd, and that the condition produced by the sight of this man was just as likely to have happened if she had suddenly met him on the street when she was off duty. We think the appellant fails to take into consideration that her nervous and physical condition was produced by the shock or fright of the electric flash on March 23rd, and that her condition on April 13th, precipitated by the sight of the man who aided her on March 23rd, was but a manifestation of the nervous condition originally caused by shock. The subsequent happening was but a reaction from the injury of the former day, and was an exhibited condition fairly and naturally traceable to a causative accident peculiar or adherent to the work in which she was engaged.

We are fully aware that in tort actions we have followed the common-law rule that there can be no recovery for mental anguish unaccompanied by physical injury, and of the reasons for the rule. The rules of the common law for tort actions, however, do not apply to cases under the Workmen's Compensation Act. Under the Workmen's Compensation Act, the proceeding is not one for damage for a wrong done, but to obtain compensation for a loss sustained by reason of disability. Virginia Code 1936, section 1887, subsections 29, et seq. The Compensation Act is intended to be remedial and must be liberally construed in favor of the employee. As Mr. Justice Browning very recently said in A. Wilson & Co. v. Mathews, 170 Va. 164, 195 S. E. 490:

"Of course, it will always be kept in mind that the statute (Acts 1918, chapter 400, section 1, *et seq.*, as amended), was enacted for the beneficent purpose of attaining a humanitarian end which had, hithereto, been frustrated by the inexorable rules of the common law."

The purpose of the Act is to provide compensation to a workman for the loss of his opportunity to engage in work when his disability is occasioned by an injury suffered from an accident arising out of and in the course of his employment.

In the instant case the disability of Mrs. Hagood was occasioned by an injury which may be fairly traced to a risk which arose out of and in the course of her employment. There was a direct causal relation between the electric flash and the irritated condition of her nervous system.

Traumatic neurosis is a definite ailment recognized by the medical profession. The condition produced by "shell shock" is not unknown to the average layman. We are not equipped to invade the field of psychiatry and must depend on medical experts to advise us.

As a result of the accident and injury Mrs. Hagood was incapacitated for work. Her incapacity was as effectual as if it had been caused by visible lesion.

We find no error in the order of the Industrial Commission, and, therefore, we affirm the same.

*Affirmed.*