# Richmond

## E. C. Womack, Incorporated, and Continental Insurance Company v. Lonnie Ellis, Jr.

March 10, 1969.

Record No. 6914.

Present, All the Justices.

*James L. Miller* (*Williams, Worrell, Kelly & Worthington*, on brief), for appellants.

*Leonard B. Sachs* for appellee.

Buchanan, J., delivered the opinion of the court.

Lonnie Ellis, Jr., forty-seven years old, was employed by E. C. Womack, Incorporated, as a truck driver. On October 5, 1965, while in the course of his employment, he was injured when the truck he was driving was in collision with a bulldozer. On November 5, 1965, he filed his claim for compensation with the Industrial Commission, as provided by Code § 65-84.*

---

* References herein are to the sections of the Workmen's Compensation Law as they appear in Vol. 9 of the 1950 Code prior to the repeal and re-enactment by Ch. 660 of the 1968 Acts, 1968 Repl. Vol. 9 of the Code.

Thereafter Ellis and Womack's insurance carrier entered into a written agreement providing that Ellis would receive compensation at the rate of $39 per week from October 12, 1965. On November 23, 1965, the Industrial Commission entered its order approving the agreement.

On January 20, 1966, Womack's insurance carrier filed with the Industrial Commission an application for a hearing on alleged change in condition, Code § 65-95, on the ground that Dr. Jones had reported that he had dismissed Ellis and ordered him to return to work on January 17, 1966.

Hearing on the application was had before Commissioner Harwood on March 25, 1966, at which all medical reports in the file were made a part of the record and Ellis was examined as a witness. He testified that he had not been able to sleep "much" and that he ached all the time in his head and in his hand and his nose bled every day; that after he was discharged from the hospital on January 11 he went back to see Dr. Jones "because I was hurting," and Dr. Jones told him there was nothing more he could do for him and that he "could go back to work and live with it."

Dr. Jones stated in a letter dated January 21, 1966, that Ellis was first hospitalized October 11, 1965, and after four or five days' treatment with traction he was symptom free, so he discharged him, but Ellis was back in his office next day complaining of his back; that he recently hospitalized Ellis again and had consulted with a neurosurgeon and orthopedist, and they were unable to find any objective cause for his complaints; that he felt that Ellis exaggerated his symptoms and he accordingly ordered him to return to work, realizing that a hearing would probably be requested.

At the conclusion of the hearing Commissioner Harwood suggested and it was agreed that Ellis be examined by Dr. Taylor, an orthopedic surgeon. Dr. Taylor examined Ellis on April 15, 1966, and reported to the insurance carrier by letter of April 21. He described his examination at length and concluded with the statement that he could find no evidence of disability "other than some mental aberration here that causes this reluctance to use both the left leg and right arm." He said he believed that Ellis should see a neurosurgeon "to be sure that he has not suffered brain damage as a result of his accident," and then if that was normal, "he should see a psychiatrist or return to work."

Accordingly Ellis was examined by Dr. Clare, neurosurgeon, who

filed his report on May 20, 1966, which concluded with the statement that Ellis was extremely difficult to evaluate; that he undoubtedly had tenderness and disability in his right hand and seemed to have some problem with his left leg. "There is a large hysterical component. I do not believe it is deliberately malingering. I feel he should be evaluated by a psychiatrist for conversion reaction."

On June 6, 1966, Commissioner Harwood delivered an opinion in which, after reviewing the record, the finding was made that "compensable incapacity for work had ceased by the date of examination by Dr. Taylor on April 15, 1966." The award of November 23, 1965, was accordingly vacated and set aside as of April 15, 1966.

Thereafter, Ellis, on October 25, 1966, filed with the Commission his petition for a hearing on the ground of change in condition. A hearing on this petition was had before Commissioner Harwood on March 1, 1967, at which all medical reports in the file were made part of the record and letters from Dr. Jackson, Dr. Adamson and Dr. Mingione were filed in evidence and Ellis testified in person.

The testimony of Ellis was indicative of his condition. He said, "I'm having terrible trouble with my head. I've been bleeding ever since at the nose and my hand is still swollen, my knuckle knocked out of place and my hand is still aching me. * * but my knee don't bother me now as bad as my hip, * * it just aches, aches, ache all the time in my hip and when I make a step on it, like I'm going downstairs, if I make the wrong step on it, I give away on that side and fall right out. I fell out once or twice with it. * * my head is aching me now so bad I don't know what to do." He testified he was not able to drive a truck any more; "I have this, look like a nervous condition and my head aches me bad and I bleeds at my right nose."

Dr. Jackson, in a letter dated December 2, 1966, set out the details of his examination and expressed his belief that Ellis was totally incapacitated and permanently disabled to return to gainful employment. Dr. Adamson said in his letter of February 13, 1967, "that his history and examination suggest to me that he is having mild reflex sympathetic dystrophy as a result of the injury received in October of 1965." Dr. Mingione's letter states that Ellis' "mood is labile, in that there are frequent episodes of gross anxiety and tremors which are difficult to see as being other than psychologically induced. There are outbursts of tearfulness and a general thought content which is depressive in tone. The psychiatric symptoms are

multiple, and are felt to be incapacitating. * * The association between the onset of these symptoms and the accident is such so as to suggest a relationship, especially in the seeming absence of psychopathology prior to the injury."

The opinion by Commissioner Harwood of September 7, 1967, reviews prior proceedings and the evidence and concludes:

"We find and conclude that a change in condition, within the meaning of § 65-7.1, Code of Virginia, has been proved. * *

"The evidence now before us preponderates in proving, and we find, that Ellis' incapacity for work is the result of a combination of factors, some of which are unrelated to the accident of October 5, 1965, and some of which flow directly and indirectly from the accident. It is our view of the evidence that, standing alone, the evidence does not support a finding of physical incapacity for work as a result of the injuries sustained in the accident of October 5, 1965, but, when the physical injuries are coupled with psychiatric symptoms, commonly called a neurosis, the net result is disability for work. The emotional disorder, flowing from the injuries received in the accident of October 5, 1965, causes incapacity for work for which compensation payments must be granted. See *Burlington Mills Corp.* v. *Hagood*, 177 Va. 204, 13 S.E.2d 291."

An award was accordingly entered in favor of Ellis for $39 per week beginning October 25, 1966, which was affirmed by the full Commission on review, and the employer appeals.

The employer makes two assignments of error: (1) that the Commission erred in not dismissing Ellis' application of October 25, 1966, for lack of jurisdiction; and (2) the award based on the application is not supported by the evidence as a matter of law.

A sufficient answer to the first assignment is that there was no motion made to dismiss the application. After claimant (Ellis) had presented his case, employer's counsel stated that he would object to any evidence about any physical condition from which claimant "may or may not be now suffering. * * There is no allegation made that there's been any change in his physical condition and that is what the claimant should be limited to." Counsel stated that it was the position of the employer that this is a claim "for a mental condition of traumatic neurosis" and a separate injury from the physical

complaint and that an application for compensation for this injury was not filed within one year from the date of the accident.

Section 65-95 of the Code, as amended, 1966 Cum. Supp., provided that review on the ground of change in condition may not be made after twelve months from the last day for which compensation was paid pursuant to an award, April 15, 1966, in this case. See *Allen* v. *Mottley Construction Co.*, 160 Va. 875, 170 S.E. 412.

Code § 65-7.1 (1966 Cum. Supp.) provided:

"Change in condition as used in this Act [Workmen's Compensation] means a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded or terminated which would affect the right to, amount of, or duration of compensation."

The change in condition alleged by Ellis as ground for requesting a hearing was: "A diagnosis by a psychiatrist of emotional disorder resulting from the accident of October 5, 1965, causing total incapacity."

This was clearly an allegation of change in condition as defined by § 65-7.1 since compensation to the employee was terminated by the Commission on June 6, 1966. The opinion then rendered by Commissioner Harwood states that Ellis' primary complaints after the accident were confined to the right hand, left hip and a fractured hand, and that at the trial Ellis testified "that he had been unable to work since the day of the accident because of injury to his left knee, right hand and head." These were complaints of physical injuries and the Commission then concluded that "compensable incapacity for work had ceased" and the compensation previously allowed was terminated.

As noted in the opinion of September 7, 1967, by Commissioner Harwood, Ellis' application for hearing on the ground of change in condition alleged incapacity for work because of emotional disorder resulting from the accident of October 5, 1965. While the opinion states that Ellis' complaints were essentially those made at the trial on March 25, 1966, yet in the record "as now constituted" it is the finding of the Commissioner that Ellis is incapacitated for work as the result of the accident and has been since the filing of his application for hearing on change in condition on October 25, 1966, and "that a change in condition, within the meaning of § 65-7.1, Code of Virginia, has been proved."

This conclusion is essentially a finding of fact and the award based thereon is conclusive and binding upon this court. Code § 65-94; *Mills v. Virginia Electric, Etc., Co.*, 197 Va. 547, 551, 90 S.E.2d 124, 127; *Burlington Mills Corp.* v. *Hagood*, 177 Va. 204, 13 S.E.2d 291.

In the latter case, which was cited in the Commissioner's opinion, Mrs. Hagood was frightened but not touched by an electric flash caused by a short circuit. She suffered no physical injury but the experience caused a traumatic neurosis which incapacitated her for work. We said that traumatic neurosis is a definite ailment; that Mrs. Hagood's incapacity "was as effectual as if it had been caused by visible lesion", and that there was no error in the award of the Commission granting her compensation.

The evidence detailed above provides adequate support for the conclusion of the Commission that Ellis' condition was not a new injury such as would be barred by the time limitation of § 65-84 of the Code, but a development proceeding from the injuries received in the accident of October 5, 1965, the limitation on which is twelve months from the last day for which compensation was paid, as provided by § 65-95 as amended, 1966 Cum. Supp. *Cf. Ginter* v. *Westinghouse Elec. & Mfg. Corp.*, 11 N.J. Super. 338, 78 A.2d 403; *Granahan* v. *Celanese Corp. of America*, 3 N.J. 187, 69 A.2d 572.

The award of the Commission is therefore

*Affirmed.*