## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### KELLER MANUFACTURING COMPANY AND BITUMINOUS CASUALTY CORPORATION v. NAOMI HOKE.

January 20, 1975.

Record No. 740313.

Present. All the Justices.

*Frank B. Miller, III (Sands, Anderson, Marks & Clarke,* on brief), for appellants.

*Lawrence J. Pascal,* for appellee.

Poff, J., delivered the opinion of the court.

Claimant, Noami Hoke, was awarded compensation for a "lumbar sprain and strain" resulting from a slip and fall sustained on January 18, 1972, during the course of her employment by Keller Manufacturing Company. On February 13, 1973, upon an application filed September 15, 1972, by Bituminous Casualty Corporation, the insurance carrier, a deputy commissioner found that claimant's condition had so changed that she was able to return to work and entered an award terminating compensation effective September 14, 1972. On April 10, 1973, the full commission affirmed that award.

In the meanwhile, on February 26, 1973, claimant filed an application alleging a change in her condition. At the July 30,

1973, hearing on her application, claimant testified that since her accident she had been unable to do any "real heavy work", only "a little cooking or dishwashing", or "just a little cleaning, dusting and things"; that she "had to go back to the doctor" in May, 1973, because "I went to having these real bad pains in my back, and it would run down my legs and up in the back of my head. I never had them before, and a dizziness in my eyes." Claimant's doctor hospitalized her for six days in May, 1973. The hospital discharge summary recited in part that "there was no objective clinical evidence of organic neurologic involvement"; that "there was evidence of hysteria or malingering"; that "it was felt that there is a large compensation involvement to her back pain and that she has a probable conversion reaction which urged compensation resolution to be obtained." The discharge diagnosis was: "Low back pain of unknown etiology, possible conversion reaction."

Responding to written questions posed by the carrier, Dr. Hyman D. Shapiro said that based upon his July 23, 1973, examination requested by claimant and the available medical and hospital records, his opinion was that claimant suffered a conversion reaction; that it "antedated my examination"; that it "was adequately so diagnosed during her hospitalization" in May, 1973; that it "was also present, tho [sic] then not diagnosed, othopedically when hospitalized" in March 1972; and that "this conversion reaction cannot be disassociated from her January 18, 1972 injury."

Based upon an examination on August 27, 1973, requested by the carrier, Dr. Weir M. Tucker reported in part: "Her eyes are closed and she can tell each time she is stuck. This is evidence that she can feel that the sensory defect she complains of is conscious and must be related to some wish fulfillment or gain. . . . Her complaints at this time are not organic, they do not conform to an organic pattern of disease and they are on a conscious level of goldbricking or making believe. In this frame of reference she does not have a conversion reaction, is not truly disabled from work and is making a servant of the medical profession to serve some purpose of hers for which she is using the accident as an excuse."

Dr. Norman I. Knorr, who had examined claimant during her hospitalization in May, 1973, reported in part: "In reviewing the

reports of Dr. Tucker and Dr. Shapiro, I see that the major issue is, Does the patient have true conversion reaction and therefore psychiatric illness as a result of the trauma, or is she malingering? My opinion at the time of my examination was that it was an unconscious process, *i.e.*, a conversion reaction. I must say that I am impressed with Dr. Tucker's examination and report which indicated a conscious simulation of physical illness. I suspect the need to be dependent and receive secondary gain from illness can produce a variety of symptoms, both conscious and unconscious, over a long period of time. I feel the chance for Mrs. Hoke to recover is limited while compensation issues are not resolved."

On November 27, 1973, a deputy commissioner found that Dr. Shapiro's report "is clear as to the finding of a conversion reaction"; that Dr. Knorr's report "is not dissimilar to that of Dr. Tucker"; that "[t]his is about as close as a physician can come to stating that a person is suffering from compensation neurosis (which is not compensable)"; and that claimant's application should be denied.

A majority of the full Commission disagreed, vacated that award, and entered its award resuming compensation payments effective May 1, 1973. Dissenting, one Commissioner found that "the medical evidence fails to preponderate within the realm of medical probability that the imagined complaints of disability are causally related to the industrial injury" and that "the weight of the psychiatric evidence points towards a compensation neurosis".

Reviewing the award, we consider whether the majority erred in its legal determination. The Commission's factual determinations, when based on credible evidence, are binding upon this Court. Code § 65.1-98. The Commission found as facts that there "is no evidence before us of any disability between the filing of the application on February 26, 1973 and May 1, 1973" and that "the evidence establishes a change in condition commencing as of May 1, 1973". We accept these findings of fact.

Based upon these findings, the Commission held that "we cannot penalize the claimant if the involvement and termination of her compensation payments has aggravated her mental state." A changed condition is compensable when it is causally connected to a covered accident. When the changed condition

results from an intervening cause, it is compensable if it aggravates a disability caused by the covered accident. Here, the Commission concluded that if the changed condition was an aggravated "mental state" resulting from termination of compensation, it was a compensable condition. But the Commission made no factual determination that claimant's mental state prior to her changed condition was a state of disability, and that such disability was caused by her accident. On the contrary, the Commission found that claimant had no disability during the two months preceding the date it found claimant's condition had changed.[1]

In terms of causal connection, this case is unlike *Burlington Mills* v. *Hagood*, 177 Va. 204, 13 S.E.2d 291 (1941) and *Womack, Inc.* v. *Ellis*, 209 Va. 588, 166 S.E.2d 265 (1969) upon which claimant relies. In *Hagood*, we held that a functional disorder resulting from traumatic neurosis caused by the shock of an accident was a compensable condition; there, direct causal connection was established by the evidence. In *Ellis*, the claimant based his allegation of changed condition upon a "diagnosis by a psychiatrist of emotional disorder resulting from the accident"; the Commission ruled that the "emotional disorder, flowing from the injuries received in the accident . . . causes incapacity for work for which compensation payments must be granted"; affirming the award and citing *Hagood*, we upheld "the *conclusion of the Commission* that Ellis' condition was . . . a development proceeding from the injuries received in the accident". [Emphasis supplied]. 209 Va. at 591-93, 166 S.E.2d at 269. Here, without benefit of such factual conclusion, the Commission based its award of compensation on the legal conclusion that if the changed condition was an aggravated "mental state" resulting from termination of compensation, it was a compensable condition. We hold that the Commission's legal conclusion was in error.[2]

---

[1] Since the Commission found that the changed condition did not occur until May 1, 1973, we must assume that the Commission disregarded or disagreed with Dr. Shapiro's opinion that the conversion reaction antedated that date and his opinion that it was not disassociated from the original injury.

[2] We do *not* hold that a condition resulting from anxiety over termination of compensation is a compensable changed condition, even when shown to be an aggravation of a conversion reaction caused by a covered accident. Such a rule might tempt claimants whose compensation has been terminated to feign complaints not admitting of objective verification.

Accordingly, the award is reversed and the application is dismissed.

*Reversed and dismissed.*

I'Anson, C.J., dissenting.

I cannot agree with the majority's conclusion that there was no causal connection between claimant's January 18, 1972, injury and her change in condition.

Upon a review of the evidence, a majority of the full Commission concluded "that the claimant probably suffers from a conversion reaction and that the payment of compensation is [unconsciously] intertwined with her mental problems. However, we cannot penalize the claimant if the involvement and termination of her compensation payments has aggravated her mental state. We are not free to speculate, and there is no evidence before us on which we can find that the change in claimant's mental condition was brought about by some non-compensable cause. Moreover, we recognize that Dr. Knorr was one of the treating physicians while the other two physicians saw the claimant on only one occasion each."

The majority of the Commission also found as facts that claimant was disabled for work beginning on May 1, 1973, and that the change in her condition was not disassociated from her January 18, 1972, injury. The reasons given by the Commission for not finding claimant disabled for work on an earlier date were that her "testimony is inconclusive as to [the] dates" of the onset of the change in her condition, and that Dr. Knorr's testimony established that she was suffering from a conversion reaction on May 1, 1973. These findings do not justify this court in holding that there was no causal connection between the injury of January 18, 1972, and the change in her condition.

The conclusion of the Commission, upon conflicting credible evidence, that a certain physical condition does or does not exist is a finding of fact binding upon us. *McPeek* v. *P. W. & W. Coal Co.*, 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969); *Johnson* v. *Capitol Hotel*, 189 Va. 585, 588, 54 S.E.2d 106, 107-08 (1949); Code § 65.1-98. Moreover, it is peculiarly within the province of the Commission to decide what weight is to be given conflicting

credible evidence. *McPeek, supra; Kelly* v. *Pendleton Const. Co.,* 182 Va. 191, 194, 28 S.E.2d 621, 623 (1944).

Since there was credible evidence supporting the Commission's findings of fact, I would affirm the award.