### Richmond

WANDA LEE MORRIS

v.

BADGER POWHATAN/FIGGIE INTERNATIONAL, INC.,
et al.

No. 1355-85

Decided October 7, 1986

COUNSEL

Edward M. Wayland, for appellant.

Nathaniel S. Newman (Thompson, Smithers, Newman & Wade, on brief), for appellee.

OPINION

COLE, J. — On February 27, 1984, the appellant, Wanda Lee Morris, sustained a compensable injury resulting from thermal burns to both of her hands. On June 13, 1984, she was operated on for carpal tunnel syndrome, right hand. The issue presented in this appeal is whether the evidence established a causal connection between the thermal burns and the carpal tunnel syndrome. The Industrial Commission found no causal relationship between them and dismissed the claim. We hold that the carpal tunnel syndrome was a compensable consequence of the thermal burns, and reverse.

Morris was employed by Badger Powhatan on February 27, 1984. Her job was to remove hot fire extinguishers from the assembly line as they came out of an oven. The first day at work she suffered second degree thermal burns to both her right and left hands. She returned to work on March 5, 1984, but again sustained burn injuries and was forced to miss additional time. These injuries were compensable, and accordingly, an award was entered by the Commission to cover them. The claimant was able to re-

turn to work on March 20, 1984, but, because of a dental problem, not work related, she did not return until March 27, 1984.

On February 29, 1984, Morris was examined by Dr. Talbott in the emergency room at Martha Jefferson Hospital in Charlottesville. He recorded that she had blisters over both hands and that "Pt. states tips of fingers are all 'numb.'" She returned on March 7, 1984, and the nursing record notes: "Hands bandaged, can't tell how hot things are and has burned some new places." Dr. Talbott recorded: "No further handling of bottles. Contacted plant nurse today . . . . Off work till 3/12/84." She again returned on March 11, 1984, and Dr. Talbott noted that there was a near complete resolution of complaints. As to the right hand, he recorded: "Right hand - can feel pain, but not identify denomination."

Because of this medical background, upon her return to work on March 27, 1984, claimant was assigned a new job fluxing rings. Her duties were to use tweezers to pick up metal rings, then dip them into a solution and place them on a piece of cardboard. This procedure was performed on an average of 3,200 times per day. On this job, the claimant missed one day from work but left early in the afternoon before the end of her shift on about 10 occasions in April, 1984, to attend dental appointments.

The claimant was employed on probation for 30 work days, and before she had actually worked for 30 days, she was fired, under the terms of her probation, because of excessive absenteeism.

Since the claimant continued to complain about her hands, Dr. Talbott referred her to Dr. Richard F. Edlich, Professor of Plastic Surgery at the University of Virginia Medical Center, Department of Plastic Surgery. By letter dated June 7, 1984, to Dr. Talbott, Dr. Edlich reported that a physical examination demonstrated anesthesia of the thumb, index, long, and the radial side of her ring finger, that flexion of her wrist accentuated the anesthesia, and that these findings were consistent with the diagnosis of carpal tunnel syndrome. Dr. Edlich referred her to Dr. Raymond Morgan, hand surgeon for the department's team.

Dr. Morgan's first contact with the claimant was on June 7, 1984, and he recorded the following information in an office memorandum:

She reports experiencing thermal burns of the finger tips of her right hand related to handling hot fire extinguishers which she was helping to manufacture. The patient reports no other bony or ligamentous trauma to the right hand . . . . Her symptoms include dropping things without her knowledge from the right hand consistently. She says this has become increasingly worse over the last month. She also reports waking each night, on multiple occasions, and having to shake her right hand violently in order to have the feeling return to the fingers. She states that the numbness in her thumb, index finger, and long finger especially, has become progressively worse over the last three to four weeks.

On June 13, 1984, Dr. Morgan performed a right carpal tunnel syndrome operation, and commenced follow-up treatment on June 21, 1984, which extended through March 28, 1985, on a regular basis.

On June 19, 1984, Morris filed an application for a change in condition alleging that she returned to work on a restricted basis. Without objection, this application was treated as an application for further work incapacity under the original burn injury of February 27, 1984.

We review a decision of the Industrial Commission under familiar principles. If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding. *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983); Code § 65.1-98. Although the findings of the Industrial Commission, if based on credible evidence, are conclusive and binding upon us, the Commission's findings of fact are not binding upon us when there is no credible evidence to support them. The question of the sufficiency of the evidence then becomes one of law. *Breckenridge v. Marval Poultry Co.*, 228 Va. 191, 196, 319 S.E.2d 769, 772 (1984) (citations omitted). The trier of fact must determine the weight of the testimony and the credibility of the witnesses, but it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record. *Hankerson v. Moody*, 229 Va. 270, 274, 329 S.E.2d 791, 794 (1985) (citations

omitted).

A hearing before a deputy commissioner was held on the application on July 18, 1984. He rendered an opinion on October 22, 1984, holding that the carpal tunnel syndrome was a condition causally related to the February 27, 1984, accident. An award was made establishing benefits beginning April 27, 1984. On review, the full commission found that the employer had been precluded from offering evidence in rebuttal regarding the carpal tunnel syndrome, and remanded the case to the trial docket solely for the purpose of taking evidence from both parties regarding the claimant's carpal tunnel syndrome and its causal connection, if any, to the claimant's employment.

The chief deputy commissioner held a further hearing on April 26, 1985, limited to causal connection. In his opinion of June 25, 1985, he stated:

> From a review of Dr. Morgan's reports after he was aware of the full work history of the claimant, it is clear from his careful and selective language that he does not relate the carpal tunnel syndrome for which he treated the claimant to be either the burn injury to the hands or to the repetitive work done subsequently. We are left to speculate.

In addition, he held that carpal tunnel syndrome was an ordinary disease of life, which, under the conditions prevailing in this case, was not compensable. Accordingly, he dismissed the claimant's application for a change in condition on both grounds. On review, the full Commission in an opinion dated September 27, 1985, found that the claimant's carpal tunnel syndrome resulted from her repetitive use of her hands after returning to a different employment and occurred over a period of time rather than from the thermal burns, a compensable event. The Commission further held that carpal tunnel syndrome is an ordinary disease of life, which is not covered by the Act unless it results from a compensable accident. It concluded that the carpal tunnel syndrome did not result, directly or indirectly, from the original accidental injury. The correctness of this finding is the issue before us.

The full Commission accepted the employer's argument that when the claimant returned to work on April 27, 1984, she had

fully recovered from the thermal burns. In support of this contention, it relied upon a form medical report of Martha Jefferson Hospital Emergency Department signed by Dr. Talbott dated March 16, 1984, which stated: "O.K. to work, but must not hold/handle hot objects. Otherwise able to perform normal duties." We do not believe that the Commission's conclusion is supported by the evidence in the record. Being able to perform normal job duties is not necessarily equivalent to a return to a pre-injury condition. Dr. Talbott documented in the emergency room records on February 27, 1984, the numbness in the claimant's hand. He never concluded in any way that this condition was resolved. The claimant's testimony is that the numbness was continuous from the date of the burn injury to the date of the carpal tunnel syndrome operation.

There is no evidence in the record to support the Commission's finding that the claimant's carpal tunnel syndrome resulted solely from repetitive use of her hands after returning to different employment of fluxing rings. The Commission stated that Dr. Morgan's office note of June 7, 1984, referred solely to the claimant's burns and made no mention of the fluxing rings job requiring 3,200 repetitive motions per day after she sustained the burns. The purpose of the office note was for Dr. Morgan's personal use in treating his patient. The medical history that he took on June 7, 1984, commenced with the burn injury and detailed the progressive development of the symptoms of numbness continuously from the injury on February 27, 1984, to the date of the office visit. He made no statement in his notes concerning the cause of the condition. The note was clearly a documentation of the medical history, and nothing more.

The opinion of Dr. Talbott in regard to causal relationship between the thermal injury and the carpal tunnel syndrome does not aid the employer, and cannot provide the justification for the Commission's holding. A review of the record reflects that Dr. Talbott never examined or treated the claimant after the diagnosis of carpal tunnel syndrome was made on June 6, 1984. He was not asked to give his opinion, and he never gave his opinion as to the causal relationship between the thermal injury and the carpal tunnel syndrome. The evidence is uncontradicted that the numbness in the finger tips as documented in the emergency room on February 29, 1984, continued unabated thereafter until the carpal tun-

nel syndrome operation. There is nothing in the record to show that the condition was totally resolved. Even after the claimant was fired from her employment on April 27, 1984, Dr. Talbott contacted her at her home to inquire of the condition. When he ascertained that the numbness persisted, he made the arrangements for her to go to the University of Virginia Medical Center to seek specialized treatment.

Dr. Richard F. Edlich, professor of plastic surgery at the University of Virginia Medical Center, saw the claimant only once. From his physical examination, he determined that his findings were consistent with carpal tunnel syndrome, and referred her to Dr. Raymond Morgan, a hand surgeon. The record does not disclose that Dr. Edlich gave an opinion concerning the cause of the carpal tunnel syndrome. His short medical report dated June 7, 1984, stating the results of his physical examination and the referral to Dr. Morgan, cannot serve as the basis for any conclusion concerning the cause of the carpal tunnel syndrome.

The claimant's problem of numbness in her hands was submitted for resolution to Dr. Raymond F. Morgan, a hand surgeon in the Department of Plastic Surgery at the University of Virginia Medical Center. In a letter report to Morris's counsel dated August 1, 1984, Dr. Morgan commented:

> The rapid onset of a carpal tunnel syndrome is uncommon in a young, thin, female such as Ms. Morris. Entrapment neuropatheis of the upper extremities are often work related. Repeated trauma to the area or continuous flexion and extension of the wrists can cause entrapment of the median nerve at that level. Swelling of the structures which travel in the tight tunnel with the nerve can also cause compression of the nerve and result in the same type of symptoms. Thermal injuries routinely cause swelling and this could be a contributing factor.

> The fact that the nerve was obviously compressed when viewed at surgery, as well as the fact that she had recovered so well since the procedure, indicates that the correct diagnosis had been made.

In a letter dated August 14, 1984, to the deputy commissioner, Dr. Morgan wrote:

I believe it is impossible to objectively prove the cause of a carpal tunnel syndrome. It is, however, likely in this case that the carpal tunnel syndrome was caused by the repetitive use of the wrist and hand and compounded by the thermal injuries sustained by the patient. Without these predisposing circumstances it is most unusual to have a carpal tunnel syndrome in a young individual such as Ms. Morris.

We find that Dr. Morgan's reports, which are not contradicted, and the other testimony in the record, establishes that the thermal burns were a contributing cause of the carpal tunnel syndrome.

When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.

A. Larson, *The Law of Workmen's Compensation* §§ 13 and 81.30.

This rule of compensable consequences has been applied on many occasions in Virginia decisions. *Bergmann v. L & W Drywall Co.*, 222 Va. 30, 278 S.E.2d 801 (1981) (post infectious neuritis); *Eccon Construction Co. v. Lucas*, 221 Va. 786, 273 S.E.2d 797 (1981); *Leonard v. Arnold*, 218 Va. 210, 237 S.E.2d 97 (1977) (fall on crutches); *Keller Manufacturing Co. v. Hoke*, 215 Va. 525, 211 S.E.2d 82 (1975) (conversion reaction); *E. C. Womack, Inc. v. Ellis*, 209 Va. 588, 166 S.E.2d 265 (1969) (psychiatric symptoms); *Burlington Mills Corp. v. Hagood*, 177 Va. 204, 13 S.E.2d 291 (1941) (traumatic neurosis); *Washington Metropolitan Transit Authority v. Medley*, 1 Va. App. 113, 335 S.E.2d 845 (1985) (tendonitis).

In summary, we hold that the thermal burns which occurred on February 27, 1984, resulted from a compensable accident; that the carpal tunnel syndrome was a natural consequence that flowed from the thermal burn injury; that the thermal burns were a contributing cause of the carpal tunnel syndrome; that the evidence established by a preponderance of the evidence a causal connec-

tion between the thermal burns and the carpal tunnel syndrome; and that as a matter of law the uncontradicted evidence requires a finding in favor of the claimant.

For the reasons stated, the decision of the Industrial Commission is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

Barrow, J., and Benton, J., concurred.