COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Elder and Fitzpatrick


GLADYS ARTOLA

v.   Record No. 3020-96-4                    MEMORANDUM OPINION*
                                                  PER CURIAM
SHOPPERS FOOD WAREHOUSE                       MAY 6, 1997
AND
TRAVELERS INDEMNITY COMPANY
 OF ILLINOIS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Paul Fiscella, on brief), for appellant.

            (Susan A. Evans; Siciliano, Ellis, Dyer &
            Boccarosse, on brief), for appellees.


     Gladys Artola (claimant) contends that the Workers'

Compensation Commission (commission) erred in finding that (1)

she sustained only a transient knee injury as a result of her

compensable January 28, 1995 injury by accident; and (2) she was

not disabled from work as a result of the January 28, 1995 injury

by accident.  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.  Rule

5A:27.

     On appeal, we view the evidence in the light most favorable

to the prevailing party below.  R.G. Moore Bldg. Corp. v.

Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

     So viewed, the evidence established that claimant tripped

_____
          *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

and fell at work on January 28, 1995, injuring her right knee. Employer accepted the accident as compensable, but denied that claimant suffered any disability or anything more than a transient knee injury.

On January 30, 1995, claimant sought medical treatment at an Urgent Care Clinic. Dr. Tesfazion, the treating physician, noted bruises on claimant's right knee, tenderness, and decreased range of motion. X-rays of claimant's right knee revealed no abnormalities. Dr. Tesfazion diagnosed a right knee bruise and noted no disability from work. On February 2, 1995, claimant returned to the clinic. Dr. Tesfazion noted "good" range of motion and no tenderness in claimant's right knee. He diagnosed a healing right knee bruise, and noted that claimant was not disabled from work.

On February 24, 1995, claimant sought treatment from Dr. William Berman. At that time, claimant reported she had sustained a February 19, 1995 work-related injury to her neck and upper back. Dr. Berman noted that claimant had sustained four other injuries, including the January 28, 1995 injury to her right knee. However, Dr. Berman did not note any complaints by claimant concerning her right knee during the February 24, 1995 office visit, nor did his examination reveal any problems with the knee. Rather, the February 24, 1995 office visit focused on claimant's neck and upper back pain and numbness in her hands and feet.

2

On May 19, 1995, claimant returned to Dr. Berman. He noted that claimant complained of a different problem, this one concerning the January 28, 1995 injury to her knees. Claimant complained of periodic swelling and knee pain, more on the right than the left. Dr. Berman diagnosed right knee patellar tendinitis and bursitis. He noted that claimant's left knee was entirely normal. Dr. Berman prescribed anti-inflammatory medication, a knee support, and a short course of physical therapy. He advised claimant she could continue to work full-duty as long as she wore the knee support.

Claimant did not return to Dr. Berman until September 22, 1995. At that time, she complained of increased knee discomfort and instability. Dr. Berman noted that claimant had been excused from work by Dr. Stark, her neurologist, due to recurrent dizziness and headaches. Dr. Berman referred claimant for an MRI of the right knee, and he advised her that she could perform light-duty work with certain restrictions. An MRI of claimant's right knee, performed on September 22, 1995, revealed "[n]o evidence of meniscal or ligamentous injury." Rather, the MRI showed a "tiny degenerative cyst . . . in the dorsal aspect of the patella" and "a localized area of fibrous dysplasia."

On March 1, 1996, Dr. Berman examined claimant once again to assess the condition of her knees. Claimant still had significant complaints of knee pain, particularly when climbing. Dr. Berman referred claimant for an orthopedic consult to

determine if the cyst required surgery.  Dr. Berman opined that claimant could remain on light-duty work status.

On April 4, 1996, Dr. Wayne Lindsey examined claimant's knees upon referral from Dr. Berman.  Dr. Lindsey noted that the MRI revealed degenerative changes without evidence of meniscal pathology.  Dr. Lindsey assessed a "[p]robable patellar chondromalacia aggravated by tight hamstrings."  He recommended that claimant change medications and start hamstring stretching exercises.  On April 5, 1996, Dr. Berman continued claimant's light-duty status with certain restrictions.  On April 25, 1996, Dr. Lindsey injected claimant's knee, and advised that she could continue light-duty work from an orthopedic standpoint.

Based upon this record, the commission found that claimant failed to prove anything more than a transient right knee injury as a result of the January 28, 1995 accident.  The commission awarded claimant medical expenses for the January 30, 1995 and February 2, 1995 visits to the Urgent Care Clinic.  In so holding, the commission found as follows:

> There is no reliable medical evidence that shows the claimant's present knee condition more probably than not results from the accident on January 28, 1995.  Dr. Berman historically notes the date of the accident alleged by the claimant, but he does not in his reports otherwise even suggest that the present knee problems are related to that fall.  We cannot infer such a relationship when the initial medical evidence does not show a more serious injury and in light of an intervening medical report that is inconsistent with claimant's testimony of a continuous and significant symptomatic injury.  In this regard, we consider Dr.

4

> Berman's report of examination on February 24, 1995 of a head injury that allegedly occurred at work five days earlier. Dr. Berman historically summarized a number of prior accidents and injuries, including one on January 28, 1995 "to both knees with symptoms more pronounced on the right side." The physician then performed a detailed and comprehensive physical examination, speaking with the claimant in her native Spanish language, but recorded no knee problems.

The commission's findings are amply supported by the initial medical records, which showed that claimant suffered a bruise to her right knee of short duration, with no causally-related disability from work. On February 2, 1995, claimant's right knee had good range of motion, no tenderness, and a healing bruise. After February 2, 1995, claimant did not seek medical treatment for a knee problem again until May 19, 1995. Based upon the totality of the medical records, the commission could reasonably infer that after May 19, 1995, claimant suffered from a degenerative condition unrelated to the January 28, 1995 injury by accident. "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

For these reasons, we affirm the commission's decision.

Affirmed.

5