COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Huff, O'Brien, and Senior Judge Haley
Argued at Fredericksburg, Virginia


ADRIENNE MALLARD

                                                    MEMORANDUM OPINION* BY
v.       Record No. 0028-18-4                       JUDGE GLEN A. HUFF
                                                    MAY 14, 2019

NEXT DAY TEMPS INC. AND
  ACCIDENT FUND GENERAL INSURANCE COMPANY


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Adrienne Mallard, *pro se*.

          Esther King (Amanda Tapscott Belliveau; McCandlish Holton
          Morris, P.C., on brief), for appellees.


          Adrienne Mallard ("claimant") appeals the decision of the Virginia Workers'

Compensation Commission.  Claimant suffered a compensable injury by accident on June 6,

2014, while working for Next Day Temps ("employer") and filed a number of claims in early

2016, which were adjudicated by an opinion from Deputy Commissioner Plunkett on July 20,

2016.  She filed additional claims in June, July, and October of 2016, and February 2017.  Those

claims were heard by Deputy Commissioner Kennard whose opinion was affirmed by the full

Commission.  Claimant now appeals to this Court and alleges that the Commission erred by:

          1. Denying her claim for complex regional pain syndrome in her left lower extremity.

          2. Denying her claim for depression, anxiety, and agoraphobia.

          3. Not considering/including testimony from Dr. Herman Zarate.

          4. Not considering "years of the [employer's] harmful behavior."

---

          * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

5. Denying her claim for chondromalacia patella of the left knee.

6. Denying her claim for lost wages compensation

7. Omitting documents from the record filed on appeal

Because the errors alleged by claimant are questions of fact, or deal with the credibility of witnesses and weight to be assigned to evidence, and the findings of the Commission are supported by credible evidence, this Court affirms the ruling of the full Commission.

## I. BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 84 (2005) (*en banc*). In this case the medical evidence is voluminous and claimant has filed an extensive series of claims. This opinion summarizes only the evidence applicable to the claims before this Court: complex regional pain syndrome/reflex sympathetic dystrophy (CRPS/RSD) in the left ankle, depression and anxiety, chondromalacia patella in the left knee, and lost wages.

Appellant suffered a fall at work on June 6, 2014. Emergency room doctors diagnosed her with a broken left ankle. She began treatment with Dr. Phillip Omohundro on June 9, 2014, who prescribed a boot for her left ankle and further diagnosed a right ankle sprain requiring a brace. Claimant performed physical therapy and was kept out of work through September 2014. By October of 2014 she had greater tolerance for activity and was walking without assistance. Claimant continued to have pain in her left ankle and leg through early 2015. Dr. Omohundro recommended continued physical therapy for her left ankle range of motion. By summer of 2015 claimant had some limitations in range of motion in her left ankle but was working regular duty.

In September and October of 2015 claimant was evaluated by other doctors in Dr. Omohundro's practice. Because of her continuing complaints of pain in her ankle, the

doctors ordered a CT scan that showed a healed fracture and moderate generalized osteopenia (reduced bone density). The doctors attributed her continued pain to neuritis and gave her a prescription for Gabapentin. The doctors' notes from that time showed she was capable of working regular duty.

Claimant had an independent medical exam (IME) with Dr. Steven Neufeld in December of 2015. Dr. Neufeld diagnosed essentially the same conditions that Dr. Omohundro had documented, although he opined that the tendinitis she had developed was not causally related to her original injury. He agreed that there was osteopenia in her fibula that might have resulted from the ankle injury, but did not believe that it would cause disability or permanent impairment. He recommended a brace, orthotics, and physical therapy.

Claimant filed a series of claims for medical benefits and temporary total disability payments. Those claims were adjudicated after a hearing before Deputy Commissioner Plunkett. In an opinion dated July 20, 2016, he found that claimant suffered an injury by accident and was entitled to medical benefits for injuries to her left leg, left foot, left ankle, right ankle, left and right wrist, and left knee. Deputy Commissioner Plunkett denied claims for injury to the left hip, right elbow, and CRPS/RSD to the left ankle because they were not supported by medical evidence and not causally related to the original injury. The award included temporary total disability benefits for lost wages from June 7, 2014 through September 28, 2014, but denied further wage loss benefits because claimant did not produce evidence of sufficient efforts to market her residual work capacity. Claimant did not request review of Deputy Commissioner Plunkett's opinion by the full Commission.

Throughout 2016 claimant saw Dr. Omohundro a number of times for continued pain in her ankle. His notes from a visit in May of 2016 show that he suspected "nerve sensitivity for the foot/ankle pains [and] no structural damage [was] noted" and that "she has many complaints

for which no specific pathology is identified." His office notes from a December 2016 visit report that claimant was "still having multiple pain issues related to her June 6, 2014 injury [including] . . . range of motion issues as well as depression. These are all causally related to the June 2014 injury."

Claimant filed a social security disability claim and was examined one time by Dr. Bruce Neeritz in June 2016 pursuant to that claim. He opined that some of her ongoing symptoms "could be considered CRPS or RSD." Claimant was also seen by Dr. Memanatu Bangura the same month, as part of her social security claim. She reported experiencing depression symptoms for about a year, but no previous psychiatric history. Dr. Bangura performed a mini mental status exam and claimant scored within normal limits. Dr. Bangura diagnosed her with major depressive disorder, single episode, with anxious distress, moderate, but did not address the cause of her depression symptoms.

On December 21, 2016 claimant had another IME; this one with Dr. Kevin Fitzpatrick. She reported that she was having moderate to severe pain in her left foot and ankle and that she had been prescribed Wellbutrin but had not started taking it yet. Dr. Fitzpatrick found full range of motion in her left ankle and both hips, some tenderness and pain in her left foot, ankle, and knee, but no sensory loss or weakness. He stated that none of his findings supported a diagnosis of CPRS/RSD but that she had neuralgia and tendinitis related to the original injury. Dr. Fitzpatrick also opined that "it seems unlikely that the injury about 2.5 years ago would be the cause of her current multifocal pain."

Claimant saw a podiatrist, Dr. Zarate, whom she located through her own research, on January 4, 2017. Dr. Zarate noted abnormally sensitive responses to sharp and dull sensation, greatest near the site of her original injury but diffused throughout her lower left leg, along with extensive other pain symptoms throughout her left hip, leg, and foot, all of which were made

worse by motion. He noted no obvious signs of anxiety or depression, but reported that she had "multiple diagnosis." Dr. Zarate said her major diagnosis was CRPS/RSD "stemming from the original ankle fracture on 6-6-14" but gave no opinion about the cause of any of her other conditions. Dr. Zarate recommended physical therapy and pain management.

Claimant filed additional claims for benefits on June 22, July 13, and October 5, 2016, and February 9, 2017. Those claims sought compensation for, *inter alia*, CRPS/RSD of the left foot/leg, major depressive disorder/anxiety and agoraphobia, chondromalacia patella in her left knee, and temporary total disability benefits (lost wages) for May 1, 2016 to July 20, 2016 and July 28, 2016 to December 20, 2016.

Dr. Omohundro was deposed on February 28, 2017, prior to the hearing on the pending claims. He testified that claimant has expressed persistent pain that most likely has some neurological basis, but that he could not state with certainty that it was consistent with a diagnosis of CRPS/RSD. He opined that neuralgia/neuritis is more consistent with her symptoms and admits that "we do not really have any objective findings to go with the complaints, but she's been consistent with her complaints." He stated that he had no basis for correlating claimant's knee pain with her 2014 injury and specifically denied finding any instability in her left patella or in any of the ligaments in her left knee. He testified that he observed no signs of depression or anxiety prior to December of 2016. He stated that "anyone with chronic pain will have some degree of depression" and acknowledged that he had not noted it prior to that point in her treatment. When asked what led him to note it at that point, in his records from a December 2016 visit, he replied that he knew she had a pending legal case and that he "wanted to make sure to kind of wrap this into a package to make it easy to resolve." Dr. Omohundro also testified that he gave the claimant her most current work restrictions in

October of 2016. He limited her to no more than three to four hours of walking or standing per eight-hour workday, noting that those restrictions are expected to be permanent.

At the hearing on March 2, 2017, claimant testified about her treatment, her visits with various doctors, and her own assessment of her conditions. She described herself as being afraid to leave her house and that many things have become difficult for her as a result of her injuries, but that she had not pursued any psychological treatment. She testified that she believes she is on "light duty" pursuant to Dr. Omohundro's recommendations and that she had gotten a new job in December of 2016. She was unable to provide any documentation of her efforts to find a job during 2016.

Claimant was scheduled for another IME prior to the hearing on her claims, which she missed. At the hearing, all parties agreed to hold the record open to allow her to reschedule that IME. Dr. Daken, a psychiatrist, evaluated claimant on March 21, 2017. During the exam, claimant reported that after her work accident, she began to experience depression and anxiety and was afraid to go outside. She told Dr. Daken that the workers' compensation case represented a "major psychological burden for her" that was having "an emotional impact" on her. Dr. Daken administered standardized testing which produced scores indicative of "major depression," but in her interview she did not mention any current depressed mood, lack of interest in pleasurable activities, anxiety, or panic. Dr. Daken pointed out that people with standardized scores like claimant's are typically "withdrawn, tearful, and visibly depressed/anxious." Claimant described herself as distracted and distressed when she spoke about the challenges of navigating her ongoing court case, but her mood "brightened considerably" when discussing more pleasant topics such as her experiences with her college marching band. Dr. Daken diagnosed her with "adjustment disorder with mixed anxiety and depressed mood associated with recent stressors, but not causally related to the June 6, 2014

work accident." In short, he found her anxiety and depression to be associated with "the stress of dealing with the medical and legal systems, not the injury."

Deputy Commissioner Kennard issued his opinion on June 6, 2017. Relevant to this appeal,[1] he denied benefits for CRPS/RSD, depression, her various problems with her left knee, and her wage loss claims. He found that she had failed to prove those particular medical conditions were causally related to the original injury and that she had failed to adequately market her residual work capacity. Claimant requested review by the full Commission, which unanimously affirmed the deputy commissioner's opinion on December 6, 2017. This appeal followed.

While this appeal was pending, claimant filed a writ of certiorari, asking this Court to order the Commission to produce sixty-nine missing documents to be included in the record. This Court issued an order granting the writ in part and denying it in part (denying it regarding documents which this Court determined were already in the record before this Court), and remanded the matter to the Commission to determine if the remaining allegedly missing documents were, in fact, part of the record before the Commission during its consideration of claimant's case. The Commission complied with the order, and in a response dated December 4, 2018, the Commission produced eleven of the documents and certified that the remainder of the documents claimant requested were not part of the record before the Commission on December 6, 2017, when the full Commission issued its opinion in this case

## II. STANDARD OF REVIEW

When reviewing a decision of the Workers' Compensation Commission, "we are bound by the commission's findings of fact as long as 'there was credible evidence presented such that

---

[1] In that opinion he awarded claimant benefits for a number of her conditions, but he found that others had already been addressed by Deputy Commissioner Plunkett and were either barred by *res judicata* or actually covered in the previous awards.

a reasonable mind could conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83-84 (2005) (*en banc*) (emphasis omitted) (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222 (1988)). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va App. 890, 894 (1991). Indeed, "[m]atters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission and are conclusive and binding on the Court of Appeals." Kim v. Sportswear, 10 Va. App. 460, 465 (1990).

### III. ANALYSIS

#### A. Causation (Assignments of Error 1, 2, and 5)

In any workers' compensation claim, the claimant bears the burden of proving that his or her medical expenses are causally related to the accident in question. Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101 (1983). "The Commission's determination regarding causation is a finding of fact." Marcus v. Arlington County Bd. of Sup'rs, 15 Va. App. 544, 551 (1993). The Commission normally relies on medical evidence for proof of causation. Clinch Valley Med. Ctr. v. Hayes, 34 Va. App. 183, 192 (2000).

In this case there is conflicting medical evidence regarding claimant's alleged CRPS/RSD, her depression, anxiety, and agoraphobia, and her chondromalacia patella of the left knee/left knee medial retinacular. Dr. Omohundro, her primary treating physician, opined in his deposition that he could not say with certainty that claimant's condition could be diagnosed as CRPS/RSD. He also noted in his deposition that he had no basis for correlating claimant's knee pain with her compensable injury, other than her subjective complaints, and that he saw no signs

of depression prior to 2016 but that "anyone with chronic pain will have some degree of depression."

Other medical evidence in the record shows varying degrees of confirmation or contradiction of Dr. Omohundro's testimony. Dr. Zarate diagnosed claimant with CRPS/RSD, but stated that he saw no signs of depression or anxiety. Dr. Neeritz opined that some of her symptoms "could be considered CRPS/RSD." Dr. Bangura diagnosed claimant with major depressive disorder, single episode, with anxious distress, moderate, but did not address the cause of those symptoms. Dr. Fitzpatrick, in his IME report, stated that none of his findings supported a diagnosis of CRPS/RSD but that claimant had neuralgia and tendinitis related to the original injury. Finally, Dr. Daken, in his IME report, diagnosed claimant with adjustment disorder with mixed anxiety and depressed mood, associated with the stress of dealing with the medical and legal systems[2] and not causally related to her June 6, 2014 work accident.

The deputy commissioner considered all of this evidence, made credibility evaluations, and assigned weight to each. Deputy Commissioner Kennard appropriately gave significant weight to the opinion of Dr. Omohundro, as the treating physician, regarding claimant's orthopedic injuries. See Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439 (1986) (explaining that the opinions of a treating physician are typically given great weight by the Commission). The deputy commissioner found no causal connection between her left knee complaints, any possible CRPS/RSD, and her compensable injury. He also gave significant weight to Dr. Daken's opinions regarding claimant's psychological claims, given his expertise as a psychiatrist, and found that claimant's symptoms of depression, stress, and anxiety were not caused by her injuries incurred in the June 2014 work accident. The Commission affirmed all of

---

[2] Emotional injury resulting from a denial of compensation is not compensable. Keller Mfg. Co. v. Hoke, 215 Va. 525, 528 (1975).

these findings, and the findings are well supported by credible evidence. Although there is contradictory evidence in the record, "[q]uestions raised by conflicting medical opinions must be decided by the Commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318 (1989). Accordingly, this Court will not disturb the Commission's findings.

### B. Wage Loss Benefits (Assignment of Error 6)

"A party seeking compensation bears the burden of proving [her] disability and the periods of that disability." Marshall Erdman & Associates, Inc. v. Loehr, 24 Va. App. 670, 679 (1997). Like a finding of causation, the Commission's determinations regarding the duration of a claimant's disability are findings of fact. See Holly Farms Foods, Inc. v. Carter, 15 Va. App. 29, 41 (1992) (approving of the Commission's decision to remand a case back to the deputy commissioner to gather evidence and determine compensable periods of disability, after determining the deputy commissioner erred by denying benefits in the first place). A claimant who is not under an open award has the burden of proving that she has made a reasonable effort to market her remaining work capacity by making reasonable efforts to procure suitable work. Id. at 42.

Claimant alleges she is entitled to wage loss benefits for a number of periods of time since January of 2016. The Commission noted in its opinion that her wage loss claim for the period from May 1, 2016 through May 26, 2016 was already addressed in Deputy Commissioner Plunkett's opinion, which was not appealed, so any further review of that claim is barred by *res judicata*.[3]

Regarding her claim for benefits from May 27, 2016 through July 20, 2016 and July 28, 2016 through December 20, 2016, the Commission credited Dr. Omohundro's testimony that he placed claimant on work restrictions starting in October of 2016, but she was under no work

---

[3] Claimant did not assign error to that decision, so this Court need not address it.

- 10 -

restrictions between May 27 and October 1 of that year. The Commission weighed all the evidence in the record and found that claimant was able to perform her pre-injury work during that period. For the period from October 1 through December 20, 2016, the Commission held that claimant did not engage in adequate efforts to market her residual work capacity. Although claimant asserted that she had searched for work via LinkedIn, other internet job sites, and personal networking, she acknowledged that she could not provide documentation of all of her efforts and she could not remember everything. The Commission found her testimony unpersuasive and denied her claim. Again, the factual finding that she had made insufficient efforts to market her residual work capacity is supported by the evidence in the record, and this Court will not disturb it.

## C. The Record on Appeal (Assignment of Error 7)

Despite the fact that this Court granted her writ of certiorari, claimant continues her assertion that a number of documents were improperly omitted from the record for this case. She filed an "addendum" to the joint appendix for this case, including all of the documents she alleges should have been included. This Court, however, is "limited to the record of the proceedings which have taken place in the lower court and have been there settled and *certified to*." Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 39 (1997) (emphasis added) (quoting Ward v. Charlton, 177 Va. 101, 107 (1941)). Claimant makes no specific legal argument about exactly why any of the documents she claims are missing from the record should be included in it. Some of the documents included in her "addendum" reflect events that occurred in 2018 (for example, an IME dated November 20, 2018). As such there is no way these documents could have been part of the record before the full Commission on December 6, 2017. Absent any legal argument explaining why the Commission's response to the writ of certiorari was insufficient, this Court finds that the record before it is complete and claimant's

assignment of error is baseless. The documents in claimant's "addendum to the joint appendix" cannot be considered because they are not properly before this Court.

## D. Procedural Default

Claimant's remaining assignments of error are barred by Rule 5A:20(e), which requires appellants to include argument, including principles of law and authority, for each assignment of error in the opening brief. As this Court has said repeatedly, claims that are "unsupported by argument, authority, or citations to the record do not permit appellate consideration." Cirrito v. Cirrito, 44 Va. App. 287, 302 n.7 (2004). Furthermore, although this Court will grant them a measure of leeway, "even *pro se* litigants must comply with the rules of court." Francis v. Francis, 30 Va. App. 584, 591 (1999). This Court cannot "comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7 (1988). Claimant's "arguments" for assignments of error three[4] and four are not developed and provide no legal basis upon which this Court could rule. Accordingly, those assignments of error are waived.

## IV. CONCLUSION

Because the Commission's factual findings in this case regarding causation and the extent of claimant's efforts to market her residual work capacity are supported by evidence in the record, and the record on appeal is correctly certified by the Commission, and because this Court

---

[4] Claimant's third assignment of error finds fault in the Commission's "failing to choose to include Dr. Herman Zarate . . . ." This assertion is baseless because the Commission expressly referred to Dr. Zarate's testimony in its opinion, weighing it against other testimony in reaching its conclusions about claimant's injuries. Appellate courts will not address an assignment of error based in an action the trial court did not actually take. Teleguz v. Commonwealth, 273 Va. 458, 471 (2007).

is barred from considering two of claimant's assignments of error by Rule 5A:20(e), the

Commission's decision is affirmed.

Affirmed.
