COURT OF APPEALS OF VIRGINIA

Present:  Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


COMPUTER SCIENCES CORPORATION AND
 INSURANCE COMPANY OF THE STATE
 OF PENNSYLVANIA                           MEMORANDUM OPINION[*] BY
                                       JUDGE ROSEMARIE ANNUNZIATA
v.    Record No.  0528-96-4                 NOVEMBER 5, 1996

EMMA J. BAUGHMAN


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION
              Susan A. Evans (Siciliano, Ellis, Dyer &
              Boccarosse, on briefs), for appellants.

              Charles W. O'Donnell (Peter M. Sweeny &
              Associates, P.C., on brief), for appellee.


     Claimant, Emma J. Baughman, filed an application with the

commission alleging a compensable injury by accident arising out

of and in the course of her employment with employer, Computer

Sciences Corporation.  Following a hearing, the deputy

commissioner found claimant had failed to prove her injury "arose

out of" her employment and denied benefits.  The full commission

reversed and entered an award in favor of claimant.  Employer

appeals.

                              I.

     The parties stipulated that on December 22, 1994 claimant

slipped and fell in the course of her employment and, as a

result, received emergency room and follow up medical treatment.

 The parties further stipulated that claimant was disabled during

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

the period December 23, 1994 through January 2, 1995.

Claimant testified that she was in overall good health on December 22, 1994 and that she had never suffered from epilepsy, black outs, dizziness, or unexplained falls. On December 14, 1994, claimant underwent arthroscopic surgery on her left knee. Prior to the surgery, claimant's knee condition had not caused her to fall. Following the surgery, claimant's physician, Dr. Michael A. Kavanagh, directed her to use crutches until she felt comfortable walking without them. On December 17, claimant went to the emergency room after a day of shopping because her knee had swollen and was very bruised. Claimant continued to walk with a crutch until December 22.

The morning of December 22, claimant reported to work shod in "flats" and without her crutch. Claimant had no difficulty walking across the lobby's shiny, marble floor as she proceeded to her office that morning. Later, claimant left the building during a mid-morning break. When she returned inside, claimant again walked through the lobby. This time, however, she "came to [a] spot on the floor and [her right] foot slid and [she] did a split," which caused her to fall and hit her left knee on the ground. Claimant landed where she had slipped and rolled onto her left side. Claimant testified that she had been walking slowly across the floor because she was still limping from her knee surgery.

With respect to the cause of her fall, claimant testified as

follows:

Direct Examination:

Q:    Okay.  Why did your right foot slip out?

A:    I stepped on something slippery.  I don't know what it was, but I definitely--it was something there.

        *    *    *    *    *    *    *

Q:    Okay.  Do you know exactly what the substance was that you slipped on?

A:    I don't know the chemical composition of it, but there was something there.

Q:    There was definitely something on the floor?

A:    There was something on the floor because I was walking along fine and I hadn't had any problem and my foot just slipped.

        *    *    *    *    *    *    *

Cross-Examination:

Q:    Ma'am, you don't know what made you fall that day; do you?

A:    I don't know what the substance was, but there was definitely something on that floor.

        *    *    *    *    *    *    *

Q:    Okay.  And, when you told the doctor that you thought you slipped in water, that was just a guess, you don't know if there was water on the floor; is that correct?

A:    I don't know if it was water, or if it was a piece of leaf, or if it was a piece of paper, or what it was.  I don't know the chemical substance.  But all I know is my foot slipped.  And it slid out. . . .

Q:    So, basically it's your testimony that you don't know why your foot slipped but because it slipped there must have been

- 3 -

something there that it slipped on?

A:   There was something on that floor.  Yes.

          *     *     *     *     *     *     *

Re-Direct Examination:

Q:   Did--were you able to--did the spot
where you fell, did it feel different to you?

A:   Yes. . . .

Q:   Could you explain to the Deputy
Commissioner what the difference was from
when you walked across the floor in the
morning to what it was when you fell?

A:   Well, when I walked across it in the
morning I didn't have, you know, it was dry,
you know.

Q:   Okay.

A:   And when I fell my foot just slid.  So,
you know, there was something there that I
slid on, my foot slid on.

          *     *     *     *     *     *     *

Carol Gay, who was walking behind claimant at the time of the incident, stated she witnessed claimant's right foot slide forward and claimant fall.  Gay stayed with claimant until the paramedics arrived.  During that time, Gay rolled up her coat and placed it under claimant's neck.  She spoke with claimant and focused on keeping her calm while claimant lay on the floor.

Claimant did not see any water on the floor but testified that she was in too much pain to take notice.  Gay also did not see any foreign substance on the floor where claimant fell, but she acknowledged that she did not examine the sole of claimant's

- 4 -

shoe or attempt to determine whether her clothes were wet. According to Gay, claimant told the paramedics she had slipped in some water. The record shows it was neither snowing nor raining the day of the accident.

The paramedics' report states that claimant lost her "footing on [a] slippery floor." The medical record from the emergency room to which claimant was taken states that claimant "slipped on H2O." Dr. Kavanagh's office note relates that claimant fell "in some water."

The deputy commissioner found no evidence showing any defect in the floor, any substance on the floor, or anything else unusual about the floor on which claimant slipped and fell. Therefore, the deputy commissioner concluded claimant's fall and injury did not arise out of her employment and denied benefits.

The full commission reversed. Although it noted that claimant did not see a foreign substance on the floor, the commission agreed with claimant's conclusion that she slipped on a foreign substance. The commission considered that claimant had "consistently insisted that there was a wet substance that caused the slip" and found that identification of a particular substance is not necessary where it reasonably can be inferred that some substance existed and caused the slip and fall. The commission inferred from the evidence of claimant's foot slipping forward in the manner described that a foreign substance on claimant's shoe or on the floor caused her to fall. The commission placed little

weight on the failure of claimant and Gay to identify a causative agent, finding that they were "understandably" distracted by claimant's injury. Thus, the commission concluded claimant's fall arose out of her employment and entered an award in claimant's behalf.

## II.

On appeal, we address whether the commission erred in finding claimant's slip and fall "arose out of" her employment. "To prove [this] element, [claimant] must show that a condition of the workplace either caused or contributed to her fall." Southside Va. Training Center v. Shell, 20 Va. App. 199, 202, 455 S.E.2d 761, 763 (1995). The commission's decision that claimant's accident "arose out of" her employment "involves a mixed question of law and fact and is thus reviewable on appeal." PYA/Monarch and Reliance Ins. Co. v. Harris, 22 Va. App. 215, 221, 468 S.E.2d 688, 691 (1996). Disposition of the present case, however, turns on a pure question of fact: whether something on the floor caused claimant to slip. Once that question is answered, resolution of the legal issue, whether the fall arose out of employment, is not contested.

On review, we construe the evidence in the light most favorable to claimant, the prevailing party below. See Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). We are bound by the commission's factual finding if it is supported by credible evidence, even though

evidence in the record may support a contrary finding. Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). In light of these principles, we affirm the commission's decision.

The commission's finding that claimant slipped on a foreign substance on the lobby floor causing her to fall is supported by credible evidence. Although claimant was unable to identify the substance upon which she slipped, she testified unequivocally that she slipped on a foreign substance on the floor. As the commission also found, "[t]he claimant . . . consistently insisted that there was a wet substance that caused the slip." Furthermore, she relayed her sensory perception that a foreign substance was present on the floor nearly immediately, while in great pain, to the paramedics, later at the emergency room, again to her own physician and ultimately, unequivocally at the hearing before the deputy commissioner. This unrefuted testimony is credible evidence, supporting the commission's award. This testimony was unrebutted and corroborated by the circumstances and nature of her fall. Contrary to employer's argument, we find Shell unpersuasive. In Shell, the claimant admitted that no foreign substance caused her fall. 20 Va. App. at 202, 455 S.E.2d at 762.

We disagree with employer's contention that the commission concluded that claimant slipped on a foreign substance merely from the fact that she slipped. In support of this argument,

- 7 -

employer cites the following language from the commission's opinion: "She did not see any foreign substance, but concludes it was there merely from the fact that she slipped.  We agree."

While the cited portion of the commission's opinion, standing alone, arguably supports employer's contention, when the statement is viewed in the context of the complete opinion, it is clear the commission's agreement was with claimant's perception that a foreign substance was on the floor and that she only realized its presence at the moment she actually slipped on it. The record shows that claimant's testimony addresses the moment she became aware of the foreign substance; that moment coincided with her slip.  More importantly, her perception that a foreign substance was present on the floor was based on evidence that, as she took a step, she put her foot down at a spot on the floor that felt different to her than the floor felt under her previous steps.  Her foot then slid forward, causing her to fall.  In short, claimant had to slip to know there was something slippery. This is not the same as saying she inferred there was something slippery merely because she slipped.

We also disagree with employer's contention that the commission's decision is open to the conclusion that claimant slipped on a substance that she carried into the building from outdoors, on the bottom of her shoe.  While the commission inferred from the evidence of claimant's foot sliding forward that she slipped on a foreign substance either on her shoe or on

the floor, this is not a finding by the commission that it was equally likely that a substance brought into the building on claimant's shoe caused her fall. Rather, the evidence supports the commission's inference that the foreign substance existed inside the building from the evidence that her foot slid forward after walking some distance from the entry through the lobby and from claimant's unequivocal testimony that the substance was on the lobby floor.

Finally, contrary to employer's assertion, the finding that claimant slipped on a substance, albeit an unidentifiable one, satisfies the actual risk test, which "`requires only that the employment expose the workman to a particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks.'" Marion Correction Center v. Henderson, 20 Va. App. 477, 480, 458 S.E.2d 301, 303 (1995) (quoting Olsten v. Leftwich, 230 Va. 317, 319, 336 S.E.2d 893, 894 (1985)). The "positional risk" doctrine, which has been rejected in Virginia, has no bearing on our conclusion in this case. See id. The "positional risk" doctrine is used "to allow recovery in unexplained fall cases." Harris, 22 Va. App. at 224 n.2, 468 S.E.2d at 692 n.2. However, claimant's fall was not "unexplained." See Pinkerton's, Inc. v. Helmes, 242 Va. 378, 381, 410 S.E.2d 646, 648 (1991) ("Every unexplained accident, by definition, means that no one can relate how the accident happened"). Both claimant and Gay testified that claimant fell

as a result of her right foot slipping forward; claimant testified that something on the floor caused her to slip; Gay could neither confirm nor deny the existence of such a substance but corroborated claimant's description of the accident. Cf. Pinkerton's, 242 Va. at 379, 410 S.E.2d at 647 (claimant unable to recall any facts regarding accident; no witnesses to accident); Harris, 22 Va. App. at 219, 468 S.E.2d at 690 (claimant remembered only reaching for grab bar from cab of truck and waking later on ground; no witnesses to accident); Memorial Hospital v. Hairston, 2 Va. App. 677, 679, 347 S.E.2d 527, 527 (1986) (no evidence that condition of floor caused claimant to fall).

Accordingly, we affirm the decision of the commission.

Affirmed.