COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


TYGER CONSTRUCTION COMPANY, INCORPORATED
 AND PENSACOLA CONSTRUCTION COMPANY,
 joint venturers d/b/a TYGER-PENSACOLA
                                        MEMORANDUM OPINION[*]
v.        Record No. 1208-96-1     BY JUDGE JOSEPH E. BAKER
                                         APRIL 15, 1997
COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF HIGHWAYS AND TRANSPORTATION
 AND COMPTROLLER OF THE COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Robert W. Curran, Judge


            Guilford D. Ware (Martha M. Poindexter;
            Crenshaw, Ware & Martin, P.L.C., on briefs),
            for appellants.

            Judith B. Anderson, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General; J. Steven Sheppard, III, Senior
            Assistant Attorney General; Kenneth C. Grigg,
            Assistant Attorney General, on brief), for
            appellees.



     Tyger Construction Company, Incorporated and Pensacola

Construction Company, joint venturers d/b/a Tyger-Pensacola

(jointly referred to herein as Tyger) appeal from a judgment of

the Circuit Court of the City of Newport News (trial court) that

denied Tyger's request for compensation claimed to be due

pursuant to a contract with the Commonwealth of Virginia,

Department of Highways and Transportation, and the Comptroller of

the Commonwealth of Virginia (jointly referred to herein as

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

VDOT).  Although Tyger alleged several trial court errors, we need only respond to one.  That issue is whether Norfolk Dredging Company (NDC), a subcontractor of Tyger, is entitled to compensation for claimed "extra work" allegedly performed on behalf of Tyger pursuant to Tyger's contract with VDOT.  To recover from VDOT for that alleged "extra work," Tyger must prove that NDC is entitled to recover from Tyger for "extra work."

On appeal, the dispositive issue is whether the trial court's finding that Tyger was not entitled to recover compensation from VDOT for "extra work" alleged to have been performed by NDC is supported by credible evidence in the record. We hold that the trial court's finding that Tyger was not entitled to recover for "extra work" is supported by the record. As the parties are fully conversant with the facts, we state only those facts necessary to an understanding of this opinion.

Guided by well established principles, we construe the evidence in the light most favorable to the party prevailing below.  See Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).  If there is evidence, or reasonable inferences can be drawn from the evidence, to support the trial court's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding.  See Morris v. Badger Powhatan/Figgie Int'l., Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).  In determining whether credible evidence exists, this Court will not

retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses. Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

In 1985, Tyger contracted with VDOT to perform work incidental to the construction of the Interstate 664 bridge approaches and tunnel between Newport News and Suffolk (contract). With the approval of VDOT, Tyger entered into a subcontract with NDC to perform the dredging work in the sites designated as the North Island and South Island (subcontract) where the highway would exit the tunnel. The contract provided that Tyger would excavate unsuitable materials from the channel bottom as necessary for the construction of the North and South Islands. VDOT would pay for the dredging work by the cubic yard of material removed.

VDOT prepared and provided copies of initial tests it had made that generally described the subsurface materials to be encountered at the North Island site as muck and soft cohesive soils. On the copies, VDOT specifically warned that VDOT does not guarantee that the boring logs provided are indicative of conditions beyond the limits of the borings. Additionally, of the nine borings in the North Island site, two showed a "trace of wood fiber(s)."

In the week prior to turning in its bid, NDC performed its own borings. Of NDC's seven borings, one indicated a trace of

wood and another actually hit wood so hard that NDC could not penetrate it. Instead of investigating in the vicinity of the hard wood, NDC simply moved over twenty feet and continued its borings. At trial, NDC's employee responsible for its bid was asked whether he took subsurface wood obstructions into consideration in preparing NDC's bid and he responded: "Why should I bid a different job than any other bidder? Why should I take myself out of contention?"

While performing the work at the North Island site, NDC encountered timber pilings, steel cables, rubber tires, and other subsurface remnants of a VDOT ferry terminal that had once occupied the site. NDC claimed it spent more than nine additional days to remove the remnants of the ferry terminal. However, NDC had estimated a total of three months to complete the North and South Island dredging and completed the work in only two months. NDC also excavated a smaller volume of material from the sites than anticipated.

The contract provided that Tyger was to perform and be paid for unforeseen work for which there was no price in the contract whenever it was necessary or desirable in order to complete the work as contemplated. Tyger asserts that NDC incurred $464,558.41 of expense in addition to the expenses required and contemplated by the contract. VDOT refused to pay for the alleged "extra work," and Tyger brought suit for that sum against VDOT.

Based on the evidence presented, the trial court ruled that the work for which NDC sought additional compensation was not "extra work," as defined by the contract. The contract definition of "extra work" sets out three elements that must be met before compensation for "extra work" is merited: (1) the work must be unforeseeable; (2) no price must be included for it in the contract, i.e., it is not already part of the work described in the contract; (3) the work "is deemed necessary or desirable in order to complete fully the work as contemplated."

Tyger contends that encountering the debris was unforeseeable because it was not described in the boring logs included in the contract. However, disclaimers were included in the contract which warn the bidder against speculating as to general conditions based on the limited information given. The nine one and three-quarter inch borings included in the contract identified only the nature of the material in the nine cylinders. The entire area of the North Island covers several thousand square feet. NDC's own borings, conducted before it submitted a bid proposal to Tyger, revealed not only traces of wood, but wood so hard that the boring could not be completed at one location. Furthermore, Tyger's expert testified that trash and debris, including tires and logs can be expected along a shoreline or at the mouth of a harbor. The record is replete with evidence that the material encountered was foreseeable.

As to the second element of the "extra work" definition, the

contract contained a price for the work. The unit price for Section 801 dredging constituted "full compensation for dredging . . . ." Under the plain language of the contract, the unit price covered all of the North Island dredging including the bulky materials. Since Tyger's claim fails the first two elements of the contract definition of "extra work," the third element is irrelevant. The record supports the trial court's finding that the work performed was a foreseeable part of the contract. The trial court's finding that Tyger was not entitled to compensation for "extra work" was amply supported by the evidence and based upon the wording of the contract and Virginia law. We cannot say that the decision of the trial court was plainly wrong or without evidence to support it.

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>