COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Willis and Bumgardner
Argued at Salem, Virginia


WALTER EVERETT CHILDRESS, JR.

                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0881-98-3      JUDGE JERE M. H. WILLIS, JR.
                                       DECEMBER 22, 1998
APPALACHIAN POWER COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          A. Thomas Lane, Jr., for appellant.

          Richard D. Lucas (Carter, Brown &
          Osborne, P.C., on brief), for appellee.


     On appeal from a decision of the Workers' Compensation

Commission, Walter Childress contends that the commission erred

(1) by holding that treatment by Dr. Gwo-Jaw Wang at the

University of Virginia was not authorized, and thus not

compensable, until August 9, 1994; (2) by refusing admission of a

letter from Childress's original treating physician as

after-discovered evidence; (3) by ruling that Childress's neck

condition is not causally related to the original compensable

accident; (4) by ruling that Childress's psychiatric condition is

not causally related to the original compensable accident; and

(5) by denying benefits for the period of January 4, 1995 through

August 22, 1995.  The employer, Appalachian Power Company

(Appalachian), has assigned cross-error to the commission's

rulings (1) that treatment by Dr. Wang was authorized and

    [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

compensable after August 9, 1994; (2) that the employer's overpayment of benefits could not be offset against future payments; and (3) that Childress was entitled to temporary total disability benefits commencing August 23, 1995.  For the following reasons, we affirm in part and reverse in part.

On appeal, we view the evidence in the light most favorable to the party prevailing below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  The commission's findings of fact will be upheld if supported by credible evidence.  See Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 277, 279, 348 S.E.2d 876, 877 (1986).

## I.  AUTHORIZATION OF TREATMENT BY DR. WANG

This case, arising out of a compensable back injury on January 27, 1985, has a long and complex history of conflict over Childress's medical treatment.  In January 1994, a deputy commissioner heard arguments relating to this conflict and ruled that Dr. James C. Dunstan, Jr., would assume the duties of Childress's primary treating physician.  On January 26, 1994, Dr. Dunstan declined to accept Childress as a patient, because Childress's condition involved a back injury and Dr. Dunstan specializes in hand injuries.  On February 7, 1994, Dr. Dunstan referred Childress to Dr. Wang, and Dr. Wang accepted Childress as a patient.

Upon learning that Dr. Dunstan had declined to treat Childress, Appalachian offered Childress a panel of three

physicians.  An additional physician, Dr. J.E. Hopkins, was added to the panel because one of the panel physicians had retired. Childress saw Dr. Hopkins on August 9, 1994.  Dr. Hopkins examined Childress, but refused treatment, thus rendering that panel defective.  The commission ruled that on August 9, 1994, the defective panel allowed Childress to seek his own treatment. It ruled that treatment by Dr. Wang became authorized and compensable on that date.  Both parties have assigned error to this finding.

Childress contends that treatment by Dr. Wang is compensable from January 26, 1994, the date that Dr. Dunstan refused to accept Childress as a patient and referred him to Dr. Wang. Appalachian contends that treatment by Dr. Wang was not authorized at any date, because Childress never intended to see any doctor other than one at the University of Virginia.  We disagree with Appalachian and the commission.

The deputy commissioner ordered Childress to see Dr. Dunstan as his treating physician.  On February 7, 1994, Dr. Dunstan referred Childress to Dr. Wang.  He so notified the commission the next day.  "A long-held principle of the . . . Commission, founded on Code § 65.1-88 [now Code § 65.2-603], is that medical management of the claimant is to be directed by the treating physician . . . ." Press v. Ale, 1 Va. App. 153, 158, 336 S.E.2d 522, 525 (1985).  Dr. Dunstan became Childress's treating physician by order of the commission.  Dr. Dunstan referred

Childress to Dr. Wang, a more suitable physician. Appalachian is responsible for the care provided by Dr. Wang subsequent to the date of referral, February 7, 1994.

## II.  CAUSATION OF NECK INJURY

The original compensable injury was to Childress's lower back. The initial report describes the injury as "Back-pain in back run [sic] all way down right leg, disc-L-5-S." Childress described, and Dr. James E. Foster located, the pain in the lower back. No mention was made of the neck. The first record of neck complaints is an office note dated December 5, 1989, when Dr. Foster reported that Childress had injured his neck jumping over a creek. Several other physicians who treated Childress declined to relate the neck pain to the original compensable accident.

"It is fundamental that a finding of fact made by the Commission is conclusive and binding upon this court on review. A question raised by conflicting medical opinion is a question of fact." Department of Corrections v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). The commission held that Childress failed to sustain his burden of proving the causal relationship between his neck problems and the compensable injury. The evidence supports this holding.

## III.  CAUSATION OF PSYCHIATRIC CONDITION

Childress next contends that the commission erred in ruling that his psychiatric condition was not causally related to the 1985 compensable injury. Childress has been treated for paranoia

and related personality disorders.  He presented to the commission evidence that the paranoia was related to the ongoing conflict over his medical care and specifically pointed to his major depression following one doctor's refusal to perform surgery.  The commission considered this evidence, as well as the observations of the carrier's psychiatrist, Dr. Andrew C. Bockner.  The commission determined that Childress's psychiatric problems pre-existed and were not causally related to the 1985 compensable injury.  Credible evidence supports this finding.

IV.  ADMISSIBILITY OF LETTER AS AFTER-DISCOVERED EVIDENCE

Childress contends that the commission erred in refusing to consider a letter from Dr. Foster, pertaining to the cause of Childress's neck injury.  He argues that the letter should be considered after-discovered evidence.  We disagree.

On March 16, 1998, Childress's counsel mailed to the commission a letter requesting that the full commission consider an attached letter from Dr. Foster.  Counsel's letter stated that Childress had been attempting to locate Dr. Foster, but had theretofore been unsuccessful, despite his diligence.  The Foster letter is a single-page, handwritten document, the date of which is not determinable from the face of the document.

The commission may reopen the record "only when . . . such course is absolutely necessary."  Rules of the Workers' Compensation Commission 3.3.

> The four requirements which must be met before the record will be reopened on the basis of after-discovered evidence are that:

> (1) the evidence was obtained after the hearing; (2) it could not have been obtained prior to hearing through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative or collateral; and (4) it is material and should produce an opposite result before the commission.

Williams v. People's Life Insurance Co., 19 Va. App. 530, 532, 452 S.E.2d 881, 883 (1995).

Childress failed to prove any of the foregoing elements. The letter and its date were not authenticated. When and under what circumstances the letter was obtained was left undetermined. Childress offered no credible evidence that he used reasonable diligence in attempting to locate Dr. Foster. The letter is so sparse that it could have no material effect on the decision of the commission. It provides no new evidence, but offers only the bare opinion of Dr. Foster that Childress's neck problems may be manifestations of his back injury. Thus, the commission properly refused admission of the letter as after-discovered evidence.

## V. DATES OF DISABILITY

The commission determined that Childress was able to work as a line mechanic for Appalachian from January 4, 1995, until he re-injured his back on August 22, 1995. Childress contends that he was disabled the entire time and should therefore be compensated for this period. Conversely, Appalachian contends that no more benefits are due because Childress did not become disabled on August 22, 1995. We disagree with both parties and affirm the decision of the commission.

- 6 -

The only medical evidence supporting Childress's claim that he was disabled throughout the entire period is the opinion of Dr. Solyom that Childress has a psychiatric condition.  We have already affirmed the commission's finding that the psychiatric condition was pre-existing.  Thus, no evidence would support a finding that Childress was disabled from January 4, 1995 through August 22, 1995.

Childress contends that Appalachian did not comply with Rule 1.4, which requires that benefits be paid by an employer through the date of filing of an application for a hearing.  See Rules of the Workers' Compensation Commission 1.4.  The commission determined that Appalachian had paid the amount owed to Childress, but had mistakenly classified the payment as long-term disability benefits rather than as workers' compensation.  Regardless, Childress did not raise this issue until two days before the hearing, and so did not do so timely.

We also disagree with Appalachian's contention that the commission erred in finding that Childress again became disabled on August 22, 1995.  Dr. Donald P.K. Chan, an orthopedist at the University of Virginia, opined that Childress was totally disabled from his back condition alone, regardless of neck or psychiatric problems.  Thus, credible evidence supports the commission's finding that Childress became totally disabled after August 22, 1995.

### VI.   ENTITLEMENT TO CREDIT FOR OVERPAYMENT

The employer contends that it has overpaid Childress $9.022.83[1] and that it should be credited with that overpayment as an offset against future benefit payments. While it is clear that an overpayment was made, the mistake was unilateral on the part of the employer. The commission found that by commingling Childress's workers' compensation benefits and his total disability payments, the employer made the mistake in such a manner that Childress could not have recognized the error. The commission recognized that workers' compensation is designed to be compensatory and should not provide a windfall to the injured employee. Nonetheless, the commission found that allowing an offset to Appalachian for its own mistake in this case would not be equitable. Childress did not recognize the error while it was being made, and thus could not have planned for a decrease in his current payments to make up for the mistake. The commission found that allowing that offset would unnecessarily and improperly punish Childress. Code § 65.2–520 permits recoupment by an employer of voluntary excess payments <u>with the approval of the commission</u>. Under the circumstances of this case, we cannot say that the commission abused its discretion in denying approval for recoupment or offset.

---

[1]The employer owed Childress $35,541 in workers' compensation benefits. It paid him $22,670.54 in workers' compensation and $22,410.91 in long-term disability benefits. Although the overpayment seems to total $10,540.45, the deputy commissioner reached the figure $9,022.83 through the unrefuted evidence offered by the employer. The full commission determined that the calculation would stand because neither party raised an objection to the amount.

## VII.  <u>SUMMARY</u>

We affirm the commission's holdings (1) that Childress's neck condition was not causally related to the 1985 compensable accident; (2) that Childress's psychiatric condition was pre-existing and not causally related to the 1985 compensable accident; (3) that the letter from Dr. Foster does not fulfill the requirements of after-discovered evidence and its admissibility was properly denied; (4) that Childress was capable of returning to work as a line mechanic on January 4, 1995; (5) that Childress was re-injured on August 22, 1995, and was entitled to benefits after that date; and (6) that Appalachian's overpayment of benefits cannot be offset against future payments to Childress.  We reverse the commission's finding that Dr. Wang's treatment was not authorized until August 9, 1994.  We hold that such treatment was authorized and compensable from the date of referral by Dr. Dunstan, February 7, 1994.

Accordingly, the decision of the commission is affirmed in part and reversed in part.

<u>Affirmed in part,</u>
<u>reversed in part.</u>

- 9 -