**Roanoke**

CITY OF BRISTOL POLICE DEPARTMENT, et al.

v.

OSCAR GRAY BROOME, JR.

No. 0929-87-3

Decided September 20, 1988

COUNSEL

Linda D. Frith (Gentry, Locke, Rakes & Moore, on brief), for appellant.

Frederick A. Rowlett (Mary Lynn Tate, Yeary, Tate & Lowe, P.C., on brief), for appellee.

OPINION

**DUFF, J.** — This appeal by the employer and carrier seeks review of an Industrial Commission decision that awarded compensation to the claimant for disability caused by a heart condition. They contend (1) that the medical evidence overwhelmingly shows the claimant is not disabled as a result of heart disease, and (2) the record contains sufficient medical evidence to rebut the presumption of causation provided in Code § 65.1-47.1. From our review of the record and consideration of the briefs and arguments presented we agree with these contentions and, accordingly, the decision appealed from is reversed.

I.

Oscar Broome, Jr. was employed by the City of Bristol Police Department in 1959 as a patrolman. In 1967, he began teaching radiological monitoring, and in 1974 he was transferred to the Detective Division where he spent forty to fifty percent of his time training officers. In 1980 he was placed in charge of the Administrative Division as a Captain. Broome estimated the percentage of time he spent doing desk work and administering polygraphs in the Administrative Division was between eighty-five and ninety percent.

Broome first saw Dr. Sarfraz A. Zaidi in 1977. At that time his blood pressure was described as normal; an EKG showed a questionable infarction, and his weight was 254 pounds. He continued with visits to Dr. Zaidi for blood pressure and weight monitoring, and Valium was prescribed. In March, 1984 claimant experienced a blackout spell while eating lunch and was hospitalized for three days. Dr. Zaidi was not able to diagnose the exact cause of this event. Broome returned to work without further incident until June 18, 1985, when he was hospitalized for shortness of breath and ankle swelling. As a result of an echocardiogram, Dr. Zaidi concluded that claimant was suffering from congestive heart failure, with atrial fibrillation. Broome returned to work in August, 1985 without further incident until he took a medical leave of absence on September 22, 1986.

Broome then filed a claim with the commission, alleging that he contracted an occupational disease (hypertension, atrial fibrillation, and congestive heart failure) as a result of his employment with the City of Bristol Police Department. After receiving notice of the claim, the employer and insurer, by counsel, had claimant's medical records and job description reviewed by four cardiologists: Dr. George Craddock, Dr. Manta Sayers, Dr. Stephen Davis, and Dr. Joseph Austin. In addition, Drs. Sayers and Austin also performed cardiological examinations of Broome.

The deputy commissioner, after an evidentiary hearing, held that claimant failed to show, by a preponderance of the evidence, that he was incapable of engaging in his regular duties; therefore, he could not claim the benefit of the statutory presumption with respect to causation. The deputy commissioner found that the ma-

jority of the physicians associated with the case related the claimant's subjective complaints, such as fatigue, to his obesity and to the medications that he takes, or has taken. Upon review, the full commission reversed and awarded compensation, with one member dissenting.

## II.

The claimant contends that, pursuant to Code § 65.1-47.1[1] he is entitled as a police officer to compensation for alleged disability due to heart disease. The statute provides police officers with a presumption of causal relationship between their job and heart disease if they establish that they have the disease and are disabled as a result. The presumption may be rebutted upon a showing by the employer that there was a non-work related cause for the heart disease. *Estate of Montgomery v. City of Portsmouth Police Department*, 4 Va. App. 525, 538, 358 S.E.2d 762, 764 (1987).

The commission relied upon the evidence of Dr. Zaidi in finding that Broome was disabled from heart disease. At the time of the claimant's hospitalization in June, 1985, Dr. Zaidi diagnosed him as suffering from "congestive heart failure with atrial fibrillation." He noted that Broome was "markedly overweight." In his report of October 30, 1985, Dr. Zaidi stated:

Mr. Broome suffers from atrial fibrillation and has been in heart failure which is under control by drug therapy. He is on anticoagulant therapy for atrial fibrillation. He has been advised to avoid undue exertion but should be able to continue normal activities *and should be able to resume work, which does not involve undue labor and is basically a desk-type position.* (emphasis added)

---

[1] The death of, or any condition or impairment of health of, salaried or volunteer fire fighters caused by respiratory diseases, and the death of, or any condition or impairment of health of, salaried or volunteer fire fighters, or of any member of the State Police Officers Retirement System, or of any member of a county, city or town police department, or of a sheriff, or of a deputy sheriff, or city sergeant or deputy city sergeant of the City of Richmond, caused by hypertension or heart disease, resulting in total or partial disability shall be presumed to be an occupational disease suffered in the line of duty that is covered by this Act unless the contrary be shown by a preponderance of competent evidence.

However, almost a year later in a report to the Virginia Supplemental Retirement System, Dr. Zaidi indicated that the claimant, because of his heart condition, was "unfit to work" and was "permanently disabled for his job."

The office notes of Dr. Zaidi, for the period between October, 1985 and October, 1986, do not disclose a worsening of claimant's condition. In fact, on several of the visits the notes indicated improvement. Also, the basic nature of the claimant's normal duties, i.e., sedentary work as an administrative officer, remained the same. We agree with the deputy commissioner's observation that "the rationale . . . for Dr. Zaidi's marked change in his assessment of the claimant's ability to work is not readily apparent." Thus, there is an internal conflict in the claimant's expert evidence, or at least an inexplicable change of position without foundation in the record.

Another conflict in the expert evidence is Dr. Zaidi's September, 1986 finding that Broome was disabled by congestive heart failure. He based this diagnosis on an echocardiogram taken when claimant was admitted to the hospital in June, 1985. Three of the four cardiologists engaged by the employer to review the case and/or examine claimant reviewed the June, 1985 echocardiogram and concluded that it showed normal function. Drs. Craddock, Austin, and Davis attributed Dr. Zaidi's incorrect diagnosis of congestive heart failure to his failure to adjust the echocardiogram for claimant's gross obesity of 312 pounds. The doctors stated that, due to such obesity, the measurements of the chamber size had to be corrected according to the body surface area. Once this was done, the results of the echocardiogram showed claimant's chamber size to be normal and his heart pumping strength, or contractibility, also to be normal. Those reports were furnished to the commission and the claimant's counsel in January, 1987. In Dr. Zaidi's final medical report of March 3, 1987, no mention was made, as was previously, of congestive heart failure or cardiomyopathy, the condition allegedly diagnosed from the echocardiogram. The doctor stated the claimant was in atrial fibrillation that, when combined with physical or psychological stress, could adversely affect his heart rate.

▮ While we are bound by findings of fact made by the commission on credible conflicting medical opinion, in those instances where an internal conflict exists in the expert opinion of the claim-

ant's attending physician, it is proper for us to review and consider the other medical opinions in the record to resolve that conflict. See *Miller v. Island Creek Coal Co.*, 223 Va. 645, 292 S.E.2d 328 (1982).

## III.

The other medical evidence in the record consists of the opinions of Drs. Davis, Sayers, Craddock and Austin. Dr. Stephen V. Davis, a fellow in clinical cardiology at the Univeristy of Virginia Medical School, reviewed the medical records and reported that although claimant's atrial fibrillation placed him at "increased risk for future cardiovascular and cerebrovascular events," it was "not disabling for a sedentary occupation."

Dr. Marta C. Sayers, a cardiologist at the Community Hospital of Roanoke Valley, examined Broome on January 2, 1987. She found no physical evidence of congestive heart failure and saw no reason why he should not continue to work.

Dr. Joseph L. Austin, a Roanoke, cardiologist, reviewed claimant's records and subsequently conducted an examination on February 16, 1987. He opined that there was no objective evidence that Broome was suffering from congestive heart failure. He further opined that the left ventricle, which he identified as being the "main pumping chamber of the heart," was normal in size, and that Broome's blood pressure was under good control. Noting that the claimant had stopped work in September, 1986 because of difficulties with fatigue and sleeplessness, Dr. Austin stated that these symptoms were "more likely to be secondary to Mr. Broome's obesity and his emotional response to stress rather than to his heart disease."

Broome's records were also examined by Dr. George B. Craddock, an Associate Professor of Medicine, Division of Cardiology, at the University of Virginia's School of Medicine. He questioned Dr. Zaidi's interpretation of the echocardiogram in light of that physician's failure to take into account the claimant's body size. He found that Broome was not suffering from any significant heart muscle disease and found no evidence that claimant's occupation had "any bearing on his clinical diagnosis."

The commission's opinion made no mention of the apparent misreading of the echocardiogram by Dr. Zaidi. The commission further disregarded the defense cardiologists' opinions that the claimant was not disabled from heart disease, concluding that "there is little in those reports (reports of Drs. Davis, Sayers and Austin) to reflect any familiarity with the duties of the Claimant's work."

We find that the commission's conclusion is not supported by the evidence in the record. Broome's job description was approved by the claimant and was attached as an exhibit to his deposition. It was submitted for review to all four doctors. Dr. Austin, in a letter dated January 5, 1987, stated that he had reviewed Mr. Broome's detailed job description. He also stated that he discussed the various stresses, aggravations and frustrations of his job with Broome at the time of the cardiac examination on February 16, 1987. Similarly, the record contains evidence that both Dr. Davis and Dr. Sayers had reviewed and/or were familiar with the claimant's job description.

We review a decision of the Industrial Commission under familiar principles. Although findings of the commission, if based on credible evidence, are conclusive and binding on us, the commission's findings of fact are not binding upon us when there is no credible evidence to support them. The question of the sufficiency of the evidence then becomes one of law. *Breckenridge v. Marval Poultry Co.*, 228 Va. 191, 196, 319 S.E.2d 769, 772 (1984). In the recent decision of *Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va. App. 276, 348 S.E.2d 876 (1986), we stated:

> The trier of fact must determine the weight of the testimony and the credibility of the witnesses, but it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record.

*Id.* at 279, 348 S.E.2d at 877.

In mistakenly finding that the majority of the physicians involved in the case were not familiar with the claimant's duties, the commission erroneously disregarded their opinions regarding disability and causation. Our review of the entire record satisfies us that Broome failed to establish that he was incapacitated by his

hypertension or heart condition. He, thus, was not entitled to the benefit of the statutory presumption. The weight of the expert evidence points to obesity and medication as the causes of Broome's fatigue and sleeplessness, which he assigned as the primary reasons for his disability.

For these reasons, the decision is reversed.

*Reversed.*

Coleman, J., and Hodges, J., concurred.