COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Felton and Senior Judge Overton
Argued at Chesapeake, Virginia


CITY OF VIRGINIA BEACH AND
 SCOTT AYERS


v.   Record No. 2549-02-1


VIRGINIA MARINE RESOURCES COMMISSION,
 GEORGE WILKIE AND ELTON TURPIN          MEMORANDUM OPINION[*] BY
                                         JUDGE WALTER S. FELTON, JR.
                                              APRIL 22, 2003

SCOTT AYERS AND
 CITY OF VIRGINIA BEACH


v.   Record No. 2630-02-1


VIRGINIA MARINE RESOURCES COMMISSION,
 GEORGE WILKIE AND ELTON TURPIN


         FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                   Edward W. Hanson, Jr., Judge

             Richard H. Matthews (Mary M. Kellam;
             Pender & Coward, P.C., on briefs), for
             appellants.

             John K. Byrum, Jr., Assistant Attorney
             General (Jerry W. Kilgore, Attorney General,
             on brief), for appellee Virginia Marine
             Resources Commission.

             Glenn R. Croshaw (Kimberly L. Stegall;
             Wilcox & Savage, P.C., on brief), for
             appellees George Wilkie and Elton Turpin.


     Scott Ayers, representative of forty-four freeholders, and

the City of Virginia Beach (collectively "Ayers") appeal the

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

judgment of the Circuit Court of the City of Virginia Beach affirming the decisions of the Virginia Marine Resources Commission ("VMRC") and the Virginia Beach Wetlands Board ("Wetlands Board") granting applications of George Wilkie and Elton Turpin to construct a total of three duplex residences affecting a coastal primary sand dune. The circuit court consolidated the review of the applications of Wilkie and Turpin prior to this appeal.

Ayers contends that the trial court erred in affirming the decisions granting these applications because (1) the Wetlands Board and VMRC failed to properly interpret Code §§ 28.2-1403 and 28.2-1408, which define "coastal primary sand dune" and to establish standards for the disturbance of coastal primary sand dunes, and (2) the evidence on the record as a whole did not adequately support Wetlands Board's and VMRC's granting of the permits and their decisions were arbitrary, capricious, or an abuse of discretion. For the following reasons, we affirm the judgment of the trial court.

## I.  BACKGROUND

Wilkie and Turpin own three adjacent, undeveloped waterfront lots on the Chesapeake Bay in Virginia Beach. Each of the three lots contains both natural sand dunes and dunes developed as a result of beach replenishment efforts. Both Wilkie and Turpin have owned their respective properties for

-

over thirty years, and the properties are immediately seaward of both Wilkie's and Turpin's residences.

Pursuant to Title 28.2 of the Code of Virginia, Wilkie and Turpin applied for dune disturbance permits from the City of Virginia Beach Wetlands Board in order to develop a total of three duplex residences with decks, paved parking and utilities on the properties.  In its June 18, 2001 meeting, the Wetlands Board considered reports from the City of Virginia Beach Planning Department and the Virginia Institute of Marine Science recommending against the approval of Wilkie's and Turpin's applications.  Both reports expressed that the proposed construction would encroach upon and destroy portions of the coastal primary sand dune in violation of Code §§ 28.2-1403 through 28.2-1408.  The Wetlands Board also considered exhibits presented by applicants Wilkie and Turpin, neighboring landowner Scott Ayers, and VIMS, including photographs of the properties and surrounding areas, detailed plans of the proposed construction on the property, and letters from interested parties.

The properties in questions involved two sets of dunes, a natural sand dune ("landward dune") and a second dune ("seaward dune"), the latter being the result of beach replenishment efforts over the prior fifteen years.  Ayers argued that the landward dune was the primary sand dune for the purposes of Title 28.2 and that, because the proposed construction would

-

directly impact the primary sand dune, the construction permits were subject to the requirements of Code § 28.2-1408. Ayers argues that there is no credible evidence in the record to support a finding that either (1) no significant adverse ecological impact would result from the proposed construction or (2) that granting the permits was necessary and consistent with the public interest. Wilkie and Turpin argued that the seaward dune was actually the coastal primary sand dune and, thus, because the proposed construction did not directly impact the coastal primary sand dune, approval of their applications did not require findings under Code § 28.2-1408. After imposing seven conditions,[1] the Wetlands Board found the permits met the requirements of Code § 28.2-1408, and approved both applications by 4-3 votes.

Ayers appealed the decisions of the Wetlands Board to the VMRC pursuant to the Administrative Process Act, Code §§ 2.2-4000 through 2.2-4033, and Part 2A of the Rules of the Supreme Court of Virginia. The VMRC reviewed the decisions on August 28, 2001. At the hearing, the Habitat Management Division of VMRC presented a report advising that the evidence

---

[1] The Wetlands Board required (1) cantilevered decks, (2) replanting for any part of the dune that is disturbed and bonding for two growing seasons, (3) the minimum parking required by the Zoning Ordinance, (4) that materials used for parking or driveways be approved by the Coastal Zone Administrator, (5) that no sand leave the site, (6) a new site plan submitted prior to the issuance of any permits, and (7) the only access-way will be an exterior stairway.

-

in the record, considered as a whole, did not support the issuance of the permits by the Wetlands Board. Notwithstanding this recommendation, VMRC affirmed the decisions of the Wetlands Board by a 7-0 vote.

On appeal to the circuit court, Ayers contended that VMRC lacked substantial evidence upon which to affirm the issuance of the permits and that in issuing the permits, the Wetlands Board exceeded its statutory authority, failed to follow lawful procedure, committed errors of law, lacked supportive evidence, and abused its discretion. Finding that the Wetlands Board and VMRC had carefully considered the record before them, and noting that the Wetlands Board had attached conditions to Wilkie's and Turpin's original proposed construction permits, the court upheld the lower decisions in their entirety. This appeal followed.

## II.  STATUTORY INTERPRETATION

Ayers first contends that the Wetlands Board and VMRC failed to properly interpret Code §§ 28.2-1403 and 28.2-1408, which define "coastal primary sand dune" and establish standards for determining when construction may disturb coastal primary sand dunes.

### A.  STANDARD OF REVIEW

"Where . . . the issue concerns an agency decision based on the proper application of its expert discretion, the reviewing court will not substitute its own independent judgment for that

-

of the agency but rather will reverse the agency decision only if that decision was arbitrary and capricious." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 246, 369 S.E.2d 1, 9 (1988). A decision is arbitrary and capricious only if there is no credible evidence in the record to support the finding and the Wetlands Board and VMRC "'arbitrarily disregard[ed] uncontradicted evidence.'" City of Bristol Police Department v. Broome, 7 Va. App. 161, 167, 372 S.E.2d 204, 207 (1988) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986)).

Local wetlands boards are the primary authority for regulating the use and development of coastal primary sand dunes in Virginia. See Code § 28.2-1403. Under the Coastal Primary Sand Dune Ordinance, the Wetlands Board has the authority to review permit applications for the use or alteration of sand dunes. Id. Determinations of what constitutes the "coastal primary sand dune" and whether proposed construction plans meet the requirements of Code § 28.2-1408 are within the specialized competency of the Wetlands Board and VMRC. On review, those decisions are entitled to deference and should only be reversed if arbitrary, capricious, or an abuse of discretion. "We accord great deference to an administrative agency's interpretation of the regulations it is responsible for enforcing." Holtzman Oil Corp. v. Commonwealth, 32 Va. App. 532, 544, 529 S.E.2d 333, 339 (2000).

-

B.   ANALYSIS

Code § 28.2-1403 defines a "coastal primary sand dune" as

> a mound of unconsolidated sandy soil which
> is contiguous to mean high water, whose
> landward and lateral limits are marked by a
> change in grade from ten percent or greater
> to less than ten percent . . . [but] shall
> not include any mound of sand, [or] sandy
> soil . . . deposited by any person for the
> purpose of temporary storage, beach
> replenishment or beach nourishment . . . .

Under Code § 28.2-1408,

> [n]o permanent alteration of or construction
> upon any coastal primary sand dune shall
> take place which would (i) impair the
> natural functions of the dune, (ii)
> physically alter the contour of the dune, or
> (iii) destroy vegetation growing thereon
> unless the wetlands board or the Commission,
> whichever is applicable, determines that
> there will be no significant adverse
> ecological impact, or that the granting of a
> permit is clearly necessary and consistent
> with the public interest, considering all
> material factors.

Before the Wetlands Board, Ayers argued that the landward dune was the coastal primary sand dune and, therefore, the restrictions of Code § 28.2-1408 applied.  Wilkie and Turpin, conversely, argued that the seaward dune was the coastal primary sand dune.  The record does not reflect a finding by the Wetlands Board or the VMRC regarding which dune is the coastal primary dune.  Regardless of which dune was the primary coastal dune, the Wetlands Board found that the proposed construction plans with the imposed conditions met the requirements of Code § 28.2-1408 with respect to the landward dune, the dune directly

-

impacted by the proposed construction.  Accordingly, the Wetlands Board did not err in interpreting Code §§ 28.2-1403 and 28.2-1408.

### III.  SUFFICIENCY OF THE EVIDENCE

Accordingly, we turn to the dispositive issue of whether there was credible evidence on the record to support the Wetlands Board's finding that the requirements of Code § 28.2-1408 were met.  Ayers contends that the trial court erred in affirming the decisions of the Wetlands Board and VMRC because the evidence on the record as a whole did not support the granting of the permits and the decisions were arbitrary, capricious, or an abuse of discretion.

### A.  STANDARD OF REVIEW

"Where the issue is whether there is substantial evidence to support findings of fact, great deference is to be accorded the agency decision."  Johnston-Willis, Ltd., 6 Va. App. at 246, 369 S.E.2d at 9.  Findings of fact will be upheld if supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989); Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989); City of Bristol Police Dept., 7 Va. App. at 167, 372 S.E.2d at 207.  "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of

-

the credibility of the witnesses."  Wagner Enterprises, Inc. v.

Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

## B.  ANALYSIS

The record reflects credible evidence to support the

Wetlands Board's finding that the requirements of Code

§ 28.2-1408 were met.  The Wetlands Board considered comments

from the Virginia Institute of Marine Science ("VIMS") and the

Planning Department of the City of Virginia Beach ("Planning

Department") advising against approval of Wilkie's and Turpin's

proposed construction plans.  VIMS specifically noted that the

proposed plans would "tend to destabilize their immediate

environs by shading vegetation and altering wind patterns that

cause wind scour of the un-vegetated areas around the duplex.

The proposed paving for access and parking will isolate these

areas from normal dune system processes."  The Planning

Department indicated that

> [a]s proposed, alterations to the dune
> resource will influence the natural
> functions of the dune, alter dune contours
> and destroy vegetation growing
> thereon. . . .  The project may result in a
> significant loss of the resource's ability
> to protect life and property from coastal
> storm events.  Displacement of dune
> vegetation and hardening of dune contours
> will further diminish the resource's
> protective capabilities.  In order for this
> reach of shoreline to provide maximum flood
> and erosion protection, the dune should
> remain relatively uniform and uninterrupted.

-

After considering these reports, the Wetlands Board conditionally approved Wilkie's and Turpin's applications. The seven conditions imposed by the Wetlands Board specifically addressed VIMS's and the Planning Department's concerns with the proposed construction. Accordingly, the Wetlands Board did not act arbitrarly and capriciously in finding that Wilkie's and Turpin's proposed construction plans, with the added conditions, met the requirements of Code § 28.2-1408.

On review, the VMRC Habitat Management Division presented an additional report to VMRC. The report advised against approval of the construction permits. It, however, did not address what effects the seven conditions imposed by the Wetlands Board would have on the environmental impact concerns raised by the VIMS and Planning Department reports. VMRC reasonably considered the mitigating effects of those conditions on the contradictory reports and unanimously affirmed the Wetlands Board's decision.

Overall, the three reports were concerned with preserving the dune's protective capabilities and identifying the potentially harmful impacts that could result from Wilkie's and Turpin's proposed construction plans. The reports addressed such harmful impacts as shading, alteration of wind patterns, and alterations to the dune's natural contours. The Wetlands Board's decision addressed these potentially harmful impacts by imposing conditions on the approval of the permits. As a

-

result, the Wetlands Board and VMRC acted within the scope of their authority in issuing permits to Wilkie and Turpin. Furthermore, their decisions are supported by credible evidence in the record.  The trial court did not err in affirming the decisions of the Wetlands Board and VMRC.

Accordingly, we affirm the judgments below.

<u>Affirmed.</u>